## HAMM *v.* CITY OF SAN FRANCISCO. [1]

*(Circuit Court, D. California.  May 28, 1883.)*

**1. FALSA DEMONSTRATIO.**

Where the description in a deed appears to be true in part and false in part, and it can be ascertained from references in the deed to other contemporary documents, and extrinsic attending facts, which part is false, so much of the description as is false must be rejected.

**2. CONSTRUCTION BY ACTS OF PARTIES.**

Where the parties to a deed, by their subsequent acts, have given a practical construction to a deed, having in some particulars a false or indefinite description, such practical construction by the parties themselves will be considered by the court in construing the doubtful clause.

**3. CASE IN JUDGMENT.**

A conveyance described the land conveyed by reference to a deed, bearing a particular date, recorded on a particular page of a public record.  Upon reference to the page of the record, a deed between the parties was found, but bearing a *different date* from the one described; so that either the date, or the page of the record, was false.  On the preceding page, facing the page mentioned in the description, was found the record of a deed between the same parties for the proper amount of land, bearing the proper date, and in all other particulars correct; and by reference to the deed bearing the proper date, and to other transactions surrounding the one in question, referred to in the deed to be construed, it appeared that the false particular in the deed was the *number of the page* of the record referred to.  *Held*, that the page mentioned in the description should be rejected as false, and the premises conveyed ascertained from the remaining portions of the description.

At Law.

*Wm. Irvin, W. S. Wood,* and *R. H. Lloyd,* for plaintiff.

*W. C. Burnett,* for defendant.

SAWYER, J.  The contest in this case arises out of a defect in a conveyance from Henry Gerke to the town of San Francisco, executed in 1850; but the day and month are left blank.  It was acknowledged, however, April 8, 1850, and recorded on the following day.  Gerke, before the land was surveyed into lots, had received a grant of two 50-vara lots in 1848; or rather an unsurveyed lot 50 by 100 varas, equal to two 50-vara lots.  Upon extending the surveys, subsequently, by direction of the ayuntamiento, six 50-vara lots

[1] From the Pacific Coast Law Journal.

were set apart as a public square, since known as Union square, which embraced the lot before granted to Gerke. Gerke then petitioned the town council either to set apart these two lots, so taken into the public square, to him, or else to grant him an equal amount of the adjoining land. The common council thereupon passed a resolution giving him two 50-vara lots, Nos. 930 and 935, fronting on the same square, on the south side of Geary street, in exchange for the lots before granted to him, which latter lots would be Nos. 918 and 919, and this exchange was accepted by Gerke. The deeds to Gerke of lots 930 and 935 were drawn up and executed by the alcalde, in pursuance of the resolution, on March 18, 1850; and the deed to the other lots, from Gerke to the town, was also drawn up, but the day of the month and the month left blank. Probably Gerke was not present at the time, and the blanks were left to be filled at the time of the execution of the deed, but were overlooked at that time. At all events, they were not filled, but the deed was acknowledged a few days afterwards, on April 8, and put on record. This was, manifestly, one transaction, the deed from Gerke to the town being a part of it. These were mutual conveyances to carry out the design of an exchange of lots. One deed from the town to Gerke recited that the lot 935, conveyed thereby, is conveyed "in lieu of lot 919," and that it is made "for and in consideration of the *reconveyance* by said Henry Gerke of the above lot, No. 919." And the other deed has a like recital and statement, with reference to the conveyance of lot 930, for a reconveyance of lot 918. No other transaction of a similar kind took place between the parties. The transaction is all plain enough upon the face of the grants from the town to Gerke, wherein the facts are all recited. There can be no mistake about it. But in the deed of reconveyance from Gerke to the town, instead of describing the property by the numbers of the lots, or by the description of the lands as given in the alcalde's grant to him, they undertook to describe it *in part*, by reference to the page of the record of the brief certificate of the alcalde that a grant had been made to him; and in this reference to the page of the record there is a mistake. The reference to the page, however, is not the whole description. There are other points of description, referring to extrinsic facts, which are readily shown by other documentary and record evidence, and the transactions alluded to in the deed, which enables us to apply the deed, without difficulty or embarrassment, to the proper subject-matter. One fact is that the conveyance is "in consideration of the reconveyance of an *equal quantity of land* with that herein conveyed." The quantity, then, "herein conveyed" must be 50 varas by 100 varas, or two 50-vara lots; for, by reference to the only conveyance to him that could relate to the transaction, there were two, and only two, 50-vara lots, and in those conveyances so referred to, both the lots conveyed, and those in consideration of which they are conveyed, are distinctly specified by their proper numbers, thus distinctly identifying the lots conveyed by both sides.

But the deed in dispute goes on to say that "I convey all my right, title, interest, and estate of, in, and to all that piece or parcel of land herein described, which said tract was conveyed to me, the said Gerke, by the authorities of the town of San Francisco, by *deed bearing date* September 8, 1846, and entered in Book B, District Records, archives of San Francisco, *page 23.*" Had the description stopped at "San Francisco," omitting "page 23," there could not have been a possible question; for, by reference to the record, with the records of the other deeds, etc., the matter would have been perfectly certain. There would not have been the slightest difficulty in applying the description to the proper subject-matter. The description would have been good and certain without the "page 23." But, upon referring to page 23 of Book B, we find a grant from the authorities of the town of San Francisco to Gerke, but it is for 100 *varas square*, lying in another situation, and therefore of *double* the quantity, and not "an *equal* quantity of land." The deed, also, on that page is not a deed bearing date September 8, 1846, but a certificate of a deed stated as bearing date September 8, 1848. There is no record of a deed on that page bearing date in 1846. There is, then, upon the face of the deed, when compared with the record, a *falsa demonstratio*—a false description. Either the date of the grant referred to, or the number of the page of the record, is necessarily and manifestly false, and we must ascertain, if we can, from the other portions of the deed and the record, and the other facts surrounding the transaction, which is the false description, and reject it, if there is enough left to enable us to apply the remainder to the proper subject-matter. Says Greenleaf, sometimes "the description is true in part, but not true in every particular. The rule in such cases is derived from the maxim, *falsa demonstratio non nocet, cum de corpore constat.* Here, so much of the description as is false is rejected, and the instrument will take effect if a sufficient description remains to ascertain its application." 1 Greenl. Ev. § 301.

By referring to page *22* of this same Book B, the opposite page facing "page 23," we find the certificate of a grant of the premises in question, which states, as it was originally written, that they were granted to Gerke by the authorities of the town on September 8, 1846, the very date mentioned in the deed containing the false description; and the grant in that case is also of "an equal quantity of land." It is true that the figure 8, both in this grant and in the other grant certified on the same page, has, at some time since originally entered, been written over the figure 6, so that it now reads 1848 instead of 1846. But the original entry, as clearly appears, was 1846, and it is not known or satisfactorily shown when the change was in fact made. That it was made is clearly apparent, both from inspection and other testimony to the fact. Undoubtedly, the date should originally have been 1848, for Leavenworth was not alcalde in 1846, the date at which the grant was first certified

to have been made, and the grant could not have been made by Leavenworth at the time stated in the certificate as originally written. But the deed under consideration, containing the false description, does not describe the date of *the certificate in Book B*, which itself has no date, but by the date of the *deed itself,*—"*deed bearing date September 8,* 1846,"—not certificate of that date. The deed or grant itself is not recorded or entered in full in that book. There is simply a brief certificate of a past transaction—a brief certificate that on a prior day a grant had been made to Gerke, which was the form, at that time, of making a record of the transaction. And this certificate, evidently, was not made at the date of the grant, for the entries of grants of different dates are all mixed up in the record, there being certificates of a number of long-subsequent grants scattered along through prior pages of the book, and of grants of an earlier date on subsequent pages, thus showing that these brief certificates that grants had been made were not entered at the time of making the grants, but often some time after the grant was made. They do not purport to be, and are not, copies of the grants. The practice then seems to have been for the party desiring a grant to present a formal written petition to the alcalde, stating the facts and describing the lot wanted. Following the petition, the grant was written upon the same sheet of paper, or a sheet attached to it, and signed; and the petition and grant so appended thereto were delivered to the party as his evidence of title. The alcalde, at his leisure, seems to have afterwards entered in Book B the brief certificate that he had made the grant at the date stated, and this was his official record of the fact. Afterwards, under the early statutes of California, these original petitions and grants were brought in by the grantees, or those deriving title from them, and recorded, and by the statutes these records were made evidence of title. Looking to the records we find that the petition and grant, of which the entry on page 22 is a certificate, is duly recorded in pursuance of the statutes. And this petition describes fully and clearly the premises in question, and the grant appended grants the premises as described, being 50 by 100 varas, or two 50-vara lots; or, in the language of the grant itself, "adjoining the tier of lots next to the pink line of the town survey, comprising two lots, each 50 varas square." And the grant bears date in fact, as shown by the record, "September 8, 1846," precisely corresponding with the date of the certificate as first written on page 22 of the records; and this petition and grant constitute the deed bearing date September 8, 1846, and entered in Book B, District Records, referred to in the deed in question, containing the false description, so that the original grant is referred to as a part of the description, and the date referred to is the date written in the deed, and not the date that ought to have been written therein,—"deed *bearing* date,"—and as it is the original, it is the better authority as to what the date as originally written was. The certifi-

cate on page 22 must have been entered from the grant itself, otherwise the date, as originally written in the certificate, would not have corresponded with the date on the grant, and *especially so,* as both must have been erroneous in fact, as we have before seen; Leavenworth not being alcalde in 1846. Yet such is the date of the grant, and also of the certificate as originally written. The grant could not have been present when the correction in the certificate was made, from 1846 to 1848, or it would, doubtless, also have been corrected.

Whether the correction in the record was made before the execution of the deed in question containing the false description is not satisfactorily shown. If afterwards, then the description in the deed in question, at the time it was made, corresponded with the date then stated in the certificate, as well as with that of the "deed itself, bearing date September 8, 1846." It is quite probable that the deed in question was drawn with this certificate on page 22 before the draftsman at the time, and as the two pages face each other, in glancing at it to get the number his eye fell upon the wrong page, and hence the mistake in the page in his draft of the deed. But he would hardly have copied 1846 had the correction been then made, as the record now shows very distinctly 1848—the 8 in heavy lines appearing written over the 6. But, however this may be, by looking to the original petition and grant, a part of the record of the title, and to the deeds of the other lots conveyed in exchange, wherein the transaction of the exchange is fully stated, and the lots exchanged on both sides designated by their proper numbers, and considering the fact that the deed in question states the consideration to be a conveyance of "*an equal quantity* of land," thereby directing attention to the other conveyance and the other surrounding facts disclosed by the evidence, and it is perfectly clear which is the false description, and that the falsity consists in appending to the description, which was clearly sufficient without it, "page 23," instead of "page 22," as it should have been if the page was to be mentioned at all. Page 23 being manifestly the false description, it must be rejected; and, rejecting it altogether, the application of the remaining description to the proper subject-matter is easy and entirely clear, in view of the surrounding facts. That such rejection must be made, and effect given to the description left, is established by the decision of the United States supreme court in *White* v. *Luning,* 93 U. S. 524, in which the judgment of this court was affirmed, wherein several distinct calls of physical objects were rejected, and the last course reversed, on the ground that the calls rejected and the course reversed appeared to be *falsa demonstratio.* That case presents a remarkable instance of the extent to which courts are justified in going in the rejection of false descriptions in written instruments.

Rejecting the false description apparent on the record, the part which is false appearing from the contemporaneous records and documentary evidence, and from the undisputed facts surrounding the

transaction, and adopting the remaining description, explained and illustrated by the. other documents and transactions referred to in the description, the title is clearly in the defendant, the city and county of San Francisco.

Again, the construction contemporaneously and subsequently put upon the deed in question, and for many years acted upon and acquiesced in by the parties to the deed, brings us to the same conclusion. The city, acting under the deed, took possession of the property intended and supposed to be conveyed, without objection from Gerke, who acquiesced in that possession for more than a quarter of a century after the transaction, before making, so far as appears, any adverse claim, or before he conveyed what he described as "all his right, title, and interest in the land" to his son-in-law, Cameron, while he had long before conveyed the lots received in exchange for the lots in question, as well as all other lots granted to him by the alcalde, or the town of San Francisco. This, itself, is a practical construction of the defective deed by the acts of both parties to it; and in such cases the acts of the parties showing their own construction may be considered by the court in construing a deed of doubtful import. *Mulford* v. *Le Franc*, 26 Cal. 108–110, and cases cited; *Reamer* v. *Nesmith*, 34 Cal. 627. *Mulford* v. *Le Franc* was cited approvingly as an authority on this point by the supreme court of the United States, in *Steinbach* v. *Stewart*, 11 Wall. 576.

I am satisfied from the attendant facts that Cameron had actual notice of the condition of the title, if such notice or want of notice could affect his right in the matter. It is scarcely possible, considering his relation to the grantor and the notoriety of the facts,—being, as it were, a part of the public history of the town and city of San Francisco,—that he should not have known all about it. But if he did not, the state of the record of the various documents connected with the transaction, with the cross-references from one record to another,—the falsity of the description in some particulars apparent on the record itself of the defective deed,—the long-continued and *then-present* notorious and open possession of defendant afforded him means of notice of the real character of the transaction, and of the title of the city, that he was bound to avail himself of; and, making the inquiry he was called upon to make, he could not have failed to discover the truth. Besides, his conveyance itself only purports to convey *such interest as the grantor had*, which, under the circumstances, is a fact of great significance. Cameron himself testifies that he knew that. Gerke was not in possession, and that the premises were occupied and claimed as a public square; that he had an abstract of the record of the title, and consulted several eminent lawyers as to its validity before the conveyance to him. The conveyance to the plaintiff must also have been with notice; certainly with ample means of knowledge. Besides, he was not a purchaser for a valuable consideration. The conveyance purports on its face to have been made for the nominal

sum of one dollar; but it is clear from the testimony that no consideration was in fact paid. This conveyance was, manifestly, made merely for the purpose of putting the title in an alien, in order to enable the action to be prosecuted in the national courts instead of the state courts in the city of San Francisco. The testimony of Cameron is that he had no agreement with the plaintiff, Hamm, in regard to the matter before the conveyance was made; but that he made the conveyance to plaintiff by direction of his attorney, without at the time asking the reason why. Plaintiff himself was not present when the conveyance was made. The attorney—not one of the present attorneys in the case—subsequently, he says, gave, as one reason for the conveyance, his desire to relieve the state judge of the responsibility of deciding against the city. Plaintiff testifies that after the commencement of the action he reconveyed three-fourths to Cameron, (and Cameron admits a reconveyance of a part,) but that he is not certain whether he has conveyed the remainder to any one or not. The attorney, he says, and himself had an interest in it for services to be rendered in recovering the lot. He also testifies that he does not know that he ever saw the deed from Cameron to him; that he does not control the suit; that he does not pay the expenses of the litigation, and does not know who does. I think I am fully justified by the evidence in finding that both Cameron and the plaintiff had ample notice of the condition of the title, and that the action is a mere speculative one, entitled to no more consideration than a court under the strict rules of law is compelled to give it. The stake played for was a very large one, and the parties to the action, ostensible and real, took the chances on the supposed defective title of the city. But if the record title in the defendant is in any particular defective, it is cured by the statute of limitations. The action was clearly barred under the statute long before its commencement.

I have no doubt as to where the title is, and there must be findings and a judgment for the defendant; and it is so ordered