. [Alabama Iron & Steel Co., *et al.* v. McKeever.]

# Alabama Iron & Steel Co., *et al.* v. McKeever.

## *Bill in Equity Impeaching Fraudulent Suit.*

1.   *Right of simple contract creditor to reach assets fraudulently disposed of by the debtor.*—Under statutory provisions (Code, §§ 1735, 3544) a simple contract creditor can maintain a bill in equity to reach and subject the assets of an insolvent debtor which have been fraudulently conveyed, or in respect of which a suit has been commenced, or decree or judgment suffered, with intent to hinder, delay or defraud creditors, when the effect of the prosecution of the suit or of the decree or judgment is shown to be a hindrance and delay of such creditor, and a fraud upon his rights.

2.   *Pendency of one creditor's bill no bar to a bill by another creditor; same as to simple contract creditor without lien.*—A pending creditor's bill, filed by the complainant therein for himself and all other creditors who may join therein, is no bar, before decree rendered, to another bill filed subsequently by a creditor of the same debtor, who was not a party to the first proceeding; and the fact, that the creditor filing the latter bill is a simple contract creditor without a judgment or lien, does not change or affect the principle here announced.

3.   *Same; nor is the appointment of a receiver.*—Where with an intent to hinder, delay and defraud other creditors, certain creditors of a common debtor file a bill for themselves and all other creditors who may join therein, and, by collusion and a fraudulently consentive decree, procure the appointment of a receiver, such appointment is no bar to, and does not answer the equity of, an original bill filed by another creditor, who was not a party to the first suit, for the purpose of preventing the accomplishment of the fraudulent design of the previous bill, and which, while recognizing the possession of the court over the debtor's assets, seeks the *bona fide* and equitable administration of such assets.

4.   *Construction of charter of corporation; right of creditors to complain of violation.*—The charter of a corporation forbidding it to mortgage, convey or pledge its property for the security of debts, &c., otherwise than by the consent of the holders of the larger part in value of the capital stock, expressed by a vote at a meeting of the stockholders called for that purpose, has no reference to the issues, output or product of the corporate business, but only to the *corpus* of the corporate property; and furthermore, since such a provision is intended alone for the benefit and protection of the stockholders, creditors have no interests to be subserved by its enforcement, and have no right to complain of its violation.

APPEAL from the Chancery Court of Shelby.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on July 4, 1894, by the the appellee, F. C. McKeever, in behalf of himself and all other creditors, who are entitled to participate in the funds hereinafter described and who pay their proportion of the costs of this proceeding.

The relief prayed for in the bill was based upon the following facts, which were averred therein: The Alabama Iron & Steel Company, a mining and manufacturing corporation, organized under the laws of Alabama, was engaged in the manufacture of pig iron and was the owner of 33,000 acres of land, and a railroad operated in connection with its mining and manufacturing business, and of furnaces, rolling mills, and other industries connected with its business. On January 1, 1894, the Alabama Iron & Steel Company was indebted to F. C. McKeever in the sum of $1,800 for work and labor done and for material furnished to said company. The Alabama Iron & Steel Company (hereafter called Iron Co.) was insolvent on and before May 18, 1894, and its insolvency was known to E. T. Peter and T. J. Peter and all the directors of said corporation before said date, and on account of its being hopelessly insolvent, the said company was unable to meet its debts and obligations. The indebtedness of said company, secured and unsecured, amounted to $940,000, which indebtedness was as follows: "On November 9, 1889, the Iron Co., executed and delivered to the Central Trust Company a mortgage or deed of trust, conveying all of its property except the line of railroad, which deed of trust was made to secure an alleged issue of $500,000 of bonds. On October 12, 1892, the Iron Co., authorized the issuance of $1,000,000 of bonds, and executed a second mortgage or deed of trust to the Central Trust Company, conveying the same property as conveyed in the first deed of trust, and as of the second mortgage bonds $200,000 were transferred as collateral security for about one-third of the face value of said bonds. The other indebtedness of the Iron Co., termed its floating indebtedness, amounted to $280,000." Mrs. Esther A. Peter, the wife of T. J. Peter, was the owner and in possession and control of a large amount of the first mortgage bonds, the exact amount of which was not known to the complainant; and C. S. Plum who was

a relative of two of the other directors, owned a large amount of the first mortgage bonds. The holdings of Esther A. Peter and C. S. Plum of the first mortgage bonds are a large majority in value of said bonds.

In addition to the property above referred to as having been conveyed by the deed of trust, the Iron Co. had at the time of the filing of the bill in the yard of the American Pig Iron Storage Warrant Co., pig iron amounting in value to $168,000, which was received by the American Pig Iron Storage Warrant Company, and its warrants or receipts given to the Iron Co., in 100 ton lots, and these receipts were attached to notes and other papers as collateral security, and pledged for money to be used by the Iron Co. This pledging was done by the authority of the directors, but without a meeting of the stockholders held for the purpose of authorizing such pledge, and without being authorized by the stockholders.

On May 18 1894, while the Iron Co., was carrying on its business, E. T. Peter, acting under the authority of a resolution adopted by the board of directors of the Iron Co., and in pursuance of such resolution, filed a bill in the chancery court of Shelby county for the alleged purpose of having a receiver appointed to protect and preserve the assets of the Iron Co., and convert the same into money, and to divide the proceeds therefrom among the creditors of the Iron Co., according to their respective priorities. This bill was filed by E. T. Peter in his own name, assuming to act for all the directors, and was directed against the Alabama Iron & Steel Co., and one French Nabors. On the day of the filing of the bill, upon application filed therewith, the register in the chancery court appointed T. J. Peter receiver of the assets of the Iron Company. T. J. Peter was appointed receiver without any notice to the Iron Company, and without any resistance on its part, and under this appointment T. J. Peter went into possession of said property. On June 11, 1894, Thos. M. Fancher and Henry Burk filed a bill to set aside the deed of trust above referred to, and to set aside the pledging of the warrants or receipts for the pig iron issued by the American Pig Iron Storage Warrant Company. This bill was filed in behalf of the unsecured creditors of the Iron Co., and was filed by the firm of attorneys who

were retained attorneys of the Iron Co., and represented said company in its suits then pending in the courts of the State. Fancher and Burk also filed a bill for the purpose of extending the receivership in the case of E. T. Peter against the Alabama Iron & Steel Company over said last named bill, and on the day of the filing of said bill, towit, on June 1, 1894, the register of the chancery court extended the receivership in the case of E. T. Peter against the Alabama Iron & Steel Company, without notice to the Iron Co., or resistance on its part; making T. J. Peter the receiver in both cases. E. T. Peter, who filed the first of the bills above referred to, is a son of T. J. Peter, and has been a director in the Iron Co., since its organization; is the owner of one share of said stock, and has been secretary and treasurer since its organization. T. J. Peter, who was appointed receiver, is the owner of one share of stock and is the president, and has been the president of the Alabama Iron & Steel Company since its organization. Esther A. Peter, the wife of T. J. Peter, owns 1,650 shares of the common stock, and 3,750 shares of the preferred stock; the holding of E. T., T. J. and Mrs. E. A. Peter is more than a majority of all the stock issued by the Iron Co. T. J. Peter is insolvent, and his bond as receiver, which was for only $5,000, was insufficient to secure the faithful performance of the duties devolving upon him as such receiver, and the sureties on said bond are insolvent, and the penalty of the bond could not be made out of any or all of them. T. J. Peter was the president and general manager of the Brierfield Coal & Iron Company, a late corporation, which virtually owned the property of the Alabama Iron & Steel Company, and by reason of the failure in the management of T. J. Peter, the said Brierfield Coal & Iron Company had become insolvent, and was forced into liquidation.

It is further alleged in the bill that the bonds which were held by Mrs. Esther A. Peter and C. S. Plum were fictitious, and that neither of said parties parted with anything in the purchase of said bonds, and that the debt represented by said bonds is a fictitious indebtedness against the Iron Co., for which it never received any adequate consideration. It was also averred in the bill that the pledging of the receipts or warrants of the

American Pig Iron Storage Warrant Co. for the pig iron represented thereby "was against the express terms of the law, and is therefore null and void."

The bill further avers that T. J. Peter failed in the management of the Alabama Iron & Steel Company, and that he is wholly incompetent for the management of such business ; that he is interested in delaying the sale of the property placed in his hands as receiver, and in preventing the creditors of said company from realizing their just portion of the assets of said company ; that it is to his interest to favor the bondholders on account of his wife's interest in the first mortgage bonds, and that he is interested in subserving the interest of said bondholders, and in delaying the sale of the personal property not covered by the deed of trust.

It was further averred that Thomas M. Fancher and Henry Burk had been in the employment and under the direction and control of E. T. Peter and T. J. Peter for many years as employès of both the Brierfield Coal & Iron Co. and the Alabama Iron & Steel Company, and that they are thoroughly identified with the interest of T. J. Peter ; that the "directors of the Alabama Iron & Steel Company are the creatures of the said T. J. Peter, for that he controls a majority of the stock issued by voting the stock of his wife ;" that at the meeting of the directors of the Iron Co., which authorized the filing of the bill of E. T. Peter for the appointment of a receiver, T. J. Peter was present, and that it was part of the plan adopted at said meeting to name him as receiver ; "that both of said bills were filed by collusion, and under the positive understanding between J. T. Peter, E. T. Peter, Thomas M. Fancher, Henry Burk and French Nabors, in order to keep said T. J. Peter in control of the affairs of said company, where he could favor the interest of the said bondholders and delay the sale of the property unsecured by said mortgage or deed of trust ; * * * * that the sole purpose and object of said bill were to shield and protect the property of the Alabama Iron & Steel Company so that it could not be reached by execution, and to favor the interest of the said first mortgage bondholders, and to hinder, delay and defraud the creditors of said Alabama Iron & Steel Company ; that any other purpose alleged in said bill is feigned and fabricated, and that

[Alabama Iron & Steel Co., *et al*. v. McKeever.]

the said bills were filed by the friends and confederates of the said T. J. Peter in order that they might control the litigation and enable the said T. J. Peter to remain in control of said property, where he could favor his own interest and that of his wife; * * * that the suffering of said decrees in said cases is but the summary way of the Alabama Iron & Steel Company getting rid of its debts, and unless said suits and decrees therein be set aside and annulled, the creditors of said Alabama Iron & Steel Company will lose their debts or be hindered, delayed and indefinitely postponed in the collection of the same, or even in realizing their just proportion of the proceeds of said assets."

The Alabama Iron & Steel Company, E. T. Peter, T. J. Peter, French Nabors, Thomas M. Fancher, Henry Burk, the American Pig Iron Storage Warrant Co. and the Central Trust Company are made parties defendant to the bill.

The prayer of the bill was that there should be a decree declaring "the property, described as a trust fund for the benefit of all the creditors, subject to such priorities as may be established by any of the creditors entitled to participate in the funds hereinabove described; that your honor will appoint in vacation, as receiver of said funds, some disinterested person; that your honor will decree that the pledge of said iron as described in this bill be declared a nullity; and will decree all bonds, both first mortgage and second mortgage bonds, a nullity, for which said Alabama Iron & Steel Company received no adequate consideration; that a reference be ordered to ascertain what consideration, if any, has passed to the Alabama Iron & Steel Company, for the sale or hypothecation of said bonds; * * * * that your honor will grant a decree declaring that the said suit of the said E. T. Peter against the Alabama Iron & Steel Company and French Nabors and all decrees therein fraudulent and void as against" the complainants and other creditors, who may make themselves parties thereto, and "will also declare said suits filed by Henry Burk and Thomas M. Fancher and the decrees therein void as against orator and other creditors; and that your honor will vest such receiver with all necessary title and authority to sell and convert the said property with all haste possible to be consistent with the

interest of parties interested in said funds, and that such receiver distribute the proceeds of said property ratably among all the creditors, after discharging any one of the prior liens which may be established against said fund." There was also a prayer for generel relief. On the filing of said bill, the complainant also filed a petition to have the receivership in the case of E. T. Peter against the Alabama Iron & Steel Company and Fancher and Burk against said company extended over this suit, and that the receiver in said suits be decreed to be the receiver as to this suit, to preserve and protect the property in his hands to await the result of this suit.

The American Pig Iron Storage Warrant Co. moved to dismiss the bill for the want of equity and demurred to it upon the following grounds : "1st. The complainants by their said bill of complaint do not show any right to bring a suit in equity. 2d. The fact that the Alabama Iron & Steel Company had placed two several mortgages on its property and that it had stored a large quantity of its iron in the storage yards of this defendant and received warrants or warehouse receipts therefor, does not give any equity to complainant's bill, who by his bill shows himself to be only a simple contract creditor. 3d. The bill shows that the iron stored with this defendant for which receipts or warrants had been given to the Alabama Iron & Steel Company, which by it had been pledged for the present loan of money, was the product manufactured by said Alabama Iron & Steel Company in the course of the business for which it was organized, and this defendant says the Alabama Iron & Steel Company had the legal right to pledge or mortgage such product to carry on its business. 4th. The complainant can not in law complain, and has no right in equity to complain, that the Alabama Iron & Steel Company pledged for money lent to it the iron manufactured and stored with the defendant as set forth in section 4 of said bill of complaint. 5th. As to creditors, the Alabama Iron & Steel Company had the legal right for the loan of money or the security of a debt to mortgage or pledge its property."

Each of the other respondents moved to dismiss the bill for the want of equity, and also demurred to it assigning many causes of demurrer. The substance

of these several grounds of demurrer is set forth in the opinion.

Upon the submission of the cause on the several motions to dismiss and the several demurrers, the chancellor decreed that each of the motions be denied and each of the demurrers be overruled. From this decree the present appeal is prosecuted, and the same is here assigned as error.

TOMPKINS & TROY, ALEX. T. LONDON and W. C. WARD, for appellant.—The bill in this case is clearly without equity. The claim of the complainant has never been reduced to judgment, and the object of the bill was not to set aside any fraudulent conveyance of property made by the Alabama Iron & Steel Company. *Hollins v. Iron Co.*, 150 U. S. 371; *O'Bear Jewelry Co. v. Volfer*, 106 Ala. 205.

The fact that the bill seeks to set aside an alleged pledge of certain iron made by the Alabama Iron & Steel Company, to certain of its creditors, without having first obtained the consent of the stockholders to that pledge, as required by subdivision 7 of section 1562 of the Code, does not give the bill equity. That provision of the statute has no application whatever to the deposit by a manufacturing corporation of its manufactured product as a security for money. The provision is not to protect creditors; it is for the benefit and protection of the stockholders; and this being the case, no one but the stockholders can complain if the pledge has been made in violation of the provisions of the statute. And the stockholders may, by mere acquiescence, make the pledge a valid one. This is similar to the principle announced in *Nelson v. Hubbard*, 96 Ala. 252. The principle here contended for is fully sustained by many authorities.—*Beecher v. Rolling Mill Co.*, 45 Mich. 103; *Manhattan Hardware Co. v. Phelan*, 128 Pa. St. 110; *Wood v. Cory Water Works Co.*, 44 Fed. Rep. 146; *Thomas v. Citizens' Horse R. Co.*, 104 Ill. 462.

The bill of Fancher and Burk was a creditor's bill to which the complainant here might come in and make himself a party.—1 Story's Eq. Plead., §§ 101, 228; 1 Dan. Chancery Prac., 236, 237. Not only would the complainant here be entitled to intervene and be made a party to the case of Fancher, but he would have the

right, in case the complainants refused to proceed with the litigation, to ask leave to conduct the case.—1 Dan. Chancery Prac., 635.

The positions of the complainant here are inconsistent. By his bill he seeks to have the two suits in which the receiver was appointed declared fraudulent, and at the same time, take the benefit of the decree appointing a receiver. He can not claim against and under the same decree.—*Hatchett v. Blanton*, 72 Ala. 423; *Espy v. Comer*, 80 Ala. 333; *Watts v. Eufaula Bank*, 76 Ala. 474; *Reynolds v. Collins*, 78 Ala. 94; *Williams v. Jones*, 77 Ala. 294; *Cooper v. Berney Bank*, 99 Ala. 119; *Thompson v. Jones*, 84 Ala. 279.

WILLIAM M. BETHEA, *contra*.—The directors of a corporation are not trustees in the strict sense of the word. They are merely agents of the corporation, and as such, stand in a fiduciary relation to the creditors of an insolvent corporation.—*Goodyear Rubber Co. v. George D. Scott Co.*, 96 Ala. 442; *Globe Iron Roofing &c. Co. v. Thacher*, 87 Ala. 458. Directors are not trustees in a strict sense. Morawetz on Corporations, § 516.

Suits must not only be founded on a real controversy, but must be conducted for adversary matters and must not be amicable; and if they are such, the powers of the court have been invoked for wrong purposes; and such suits should be dismissed from court, of its own motion. *Sage v. M. & L. R. R. Co.*, 18 Fed. Rep. 571, s. c. 125 U. S. Rep. 361; Gluck & Becker Receiver of Corporations, p. 493, § 115; 2 Cook on Stocks and Stockholders, p. 1411, § 863; *In re Phil. & Reading R. R. Co.*, 14 Phil. 501; *Wilson v. Barney*, 5 Hun 259. The allegations of the bill are sufficient as to fraud.—*Fort Payne F. Co. v. Fort Payne C. & I. Co.*, 96 Ala. 477, and cases cited.

Decrees suffered or confessed with intent to hinder and delay or defraud are void.—Code of 1886, § 1735; *Sage v. R. R. Co., supra; Gay, Hardie & Co. v. Brierfield C. & I. Co.*, 94 Ala. 303; *Nelson v. Barney*, 5 Hun 259; *State v. Bank*, 33 N. Y. 9; *Cartwright v. Bamberger*, 90 Ala. 405.

Simple contract creditors may file such a bill.—Code of 1886, § 3544. More than one creditor's bill may be filed.—*Talladega Mer. Co. v. Jenifer Iron Co.*, 102 Ala. 259; *Hall v. Ala. Ter. & Imp. Co.*, 104 Ala. 577.

McCLELLAN, J.—The several motions to dismiss McKeever's bill and the main demurrers to it proceed upon two grounds, viz. :   *First,* that the complainant has no lien upon the property he seeks to subject to the payment of his debt, but is only a simple contract creditor without judgment or lien ; and, *second,* that the property being already in the hands of a receiver appointed at the suit of E. T. Peter, and the receivership having been extended to the case of Fancher and Burk against the Iron & Steel Co., who file their bill as creditors at large for themselves and all other creditors who may come in, make themselves parties, &c., complainant's remedy is by coming in under that bill, &c., &c.

We consider it settled in this court that a simple contract creditor may file his bill to reach and subject assets of his insolvent debtor which have been either fraudulently conveyed, or in respect of which a suit has been commenced, or decree or judgment suffered, with intent to hinder, delay and defraud creditors, at least whenever the effect of the prosecution of the suit, or of the decree or judgment is shown to be hindrance and delay of such creditors, and a fraud upon their rights.—Code of 1886, §§ 1735, 3544 ; *Cartwright v. Bamberger, Bloom & Co.,* 90 Ala. 405 ; *Gay, Hardie & Co. v. Brierfield Coal & Iron Co.,* 94 Ala. 303 ; *Alabama National Bank v. Mary Lee Coal & Railway Co.,* 108 Ala. 288.

And it is also settled by the decisions of this court that "a pending creditors' bill filed by complainant for himself and all other creditors who may join therein, is no bar before decree rendered to another bill filed subsequently by another creditor of the same debtor, who was not a party to the first proceeding."—*Hall v. Ala. Ter. & Imp. Co.,* 104 Ala. 577 ; *Talladega Mercantile Co. v. Jenifer Iron Co.,* 102 Ala. 259.   It is true that the complainants who were thus held to have the right to proceed by original bill had reduced their debts to judgment ; but notwithstanding that fact they had in each of the cases a perfect right to go in under the bill previously filed by another creditor for himself and all other creditors making themselves parties ; and it was expressly ruled that this right was not exclusive, but to be availed of only at the election of the judgment creditor, and that while he could get all the relief to which he was entitled by such intervention, he yet was at liberty to proceed by

independent bill. And all this applies with equal force to simple contract creditors ; the fact that they might get the relief to which they are entitled under a bill already before the court does not bar their right to exhibit an original bill to that end.

It is not seriously questioned that the present bill sufficiently imputes collusion and fraud to the parties to the bill filed by Peter and also to the parties to the bill filed by Fancher and Burk, and presents all such parties in the attitude of invoking the aid of the chancery court to get all the property of the debtor company in the hands of the receiver to be held and manipulated by him for the benefit of the complainants and respondents in those suits to the exclusion, hindrance, delay and ultimate defeat and destruction of the claims of the complainant in this bill, and other creditors of the Iron & Steel Co. And it is no answer to the equity of such a bill that the property is in the hands of a receiver appointed by the court, such appointment being shown to have been consentive and collusive—the act of the conspiring parties rather than the judgment or order of the court.—*Alabama National Bank v. Mary Lee Coal & Ry. Co.*, 108 Ala. 288.

The chancery court having taken possession of the property through the receiver appointed at the suit of Peter, any right of this complainant, in what manner soever asserted, to subject the property to the payment of his debt, must be effectuated by dealing with that possession of the court as an accomplished fact, which it none the less is because of the alleged collusion and fraudulently consentive decrees by which the receivership was created and extended. The prayer of the present bill for further extension of the receivership to this case, is in essence a prayer that the character of the court's possession be changed in respect of its objects and purposes, so that, instead of being held as heretofore for the fraudulent purposes which actuated all parties to the two previous bills in praying and consenting to the appointment of the receiver and the extension of the receivership, it should hereafter be held for the *bona fide* purpose of paying the debts due from the Iron & Steel Co. out of it. This was but a recognition of the established status of the property and an invocation of the court's powers to an equitable administration of it ; and

we are unable to see that in assuming this attitude the complainant is claiming under the decrees which he alleges to be fraudulent and void as to him and the other *bona fide* creditors of the corporation. The possession once taken under the present bill, the case will proceed, and, if its averments as to fraud be proved, the property will be administered under it, as if the other bills had not been filed.

The bill is without equity in so far as it seeks to annul and avoid the hypothecation of pig iron, the product of the business which the Iron & Steel Co. was authorized to and did carry on, to or through warrants issued by the American Pig Iron Storage Warrant Co. In the first place the provision in the charter of the Iron & Steel Co. forbidding it to mortgage, convey or pledge its property for the security of debts, etc., "otherwise than by the consent of the holders of the larger part in value of the capital stock, expressed by a vote at a meeting of the stockholders called for that purpose", in the manner and upon the notice required by the charter, it would seem, has no reference or application to the issues, output or product of the corporate business, but only to the *corpus* of the corporate property—its plant, or permanent property—as distinguished from its product which is produced only for the purposes of disposition by sale or otherwise. In the next place the provision in question is intended for the benefit and protection of stockholders and not of creditors, and the latter, having no interests to be subserved by its enforcement, cannot be heard to complain of its infraction.—Code of 1886, § 1562; *Nelson v. Hubbard,* 96 Ala. 251; *Pollak v. Barrett,* 108 Ala. 390.

The decree overruling the several motions to dismiss the bill for want of equity and the several demurrers interposed separately by the respondents will be modified here by sustaining the motion of the American Pig Iron Storage Warrant Co. to dismiss the bill as to it and its assignments of demurrer 3, 4 and 5.; and as thus corrected it will be affirmed.

Modified and affirmed.