[Sac. No. 1044.     Department Two.—April 27, 1904.]

## C. D. GALBRAITH, Appellant, v. SHASTA IRON COMPANY, Respondent.

PATENTED MINE—DESCRIPTION OF BOUNDARIES—MONUMENTS CONTROLLING LOCATION.—Where there was an ambiguous description in the patent of a mine, and there is a sufficient description by ascertained boundaries and natural objects and permanent monuments to identify the claim, the ascertained boundaries and monuments will control the courses and distances, and the land so described is not open to location. ·

ID.—PATENT CONCLUSIVE OF SURVEY.—A patent to a mine, duly signed, countersigned, and sealed, not only operates to pass the title, but is in the nature of an official declaration that all the requirements preliminary to its issue have been complied with, and the presumptions attending it are not open to rebuttal.

ID.—DEED OF CORPORATION—RATIFICATION OF STOCKHOLDERS.—The ratification by the stockholders of the deed of a corporation is only required as between the corporation and its stockholders or those connected with the corporation title, and the want of a ratification does not render it void as against a trespasser.

APPEAL from a judgment of the Superior Court of Shasta County.   Edward Sweeny, Judge.

The facts are stated in the opinion of the court.

James E. Isaacs, and W. H. H. Hart, for Appellant.

William E. Colby, for Respondent.

HENSHAW, J.—Plaintiff upon the tenth day of April, 1899, made a mining location called the Los Angeles Quartz Mine, which location included within its boundaries a portion of the mining ground claimed by defendant.   Upon trial of their conflicting rights judgment passed for defendant, and plaintiff appeals.

It appears that on the fifteenth day of April, 1882, a patent was issued by the United States government to the California Iron Mining and Smelting Company, for the Pitt River Iron Ore Mine.   By mesne conveyance the defendant became the grantee of the patentee's interest in the mining property un-

der the patent. On the third day of October, 1898, the commissioner of the land department of the United States rendered his decision in relation to a certain mining application, and caused this respondent to be notified of an error in the description of its mining patent. This error consisted in an erroneous length given to the line connecting the Pitt mine to a government corner, so that if this connecting-line alone were considered it would place the claim about a quarter of a mile from its actual location upon the ground. Defendant took immediate steps to have this error corrected according to the instructions contained in the commissioner's letter. A new official survey of the mine was had and a new application for a correct patent was filed in the United States land office, together with a conditional conveyance of the mine to the United States, dated the thirteenth day of February, 1900, the condition of the conveyance being the issuance to the defendant herein of a new and correct patent for the Pitt River Iron Ore Mine. It was long after the issuance of the patent, and during the pendency of these proceedings to correct the error contained in it, that appellant filed his adverse mining location and commenced this suit.

Notwithstanding the erroneous length given to the tying-line in the patent, the patent itself contains a sufficient description of the Pitt River Iron Ore Mine so that the property intended to be conveyed can be definitely ascertained from the remaining description given in the patent, which is absolutely correct. It appears that the new survey, which followed the old, and which was made for the purpose of correcting this erroneous description, is identical in all respects with the old survey, saving in the one matter of the length of the tying-line. All the courses and distances of the boundary-lines, their lengths and direction, the locations of the corner monuments, the bearing trees, are found in the patent precisely as in the field-notes of the survey, and they agree in every detail. There are therefore references in the patent description to artificial monuments and to natural monuments to which the Pitt River Iron Ore Mine was tied, and by means of which its exact *locus* on ground can be positively determined. In making the new survey all but one of the old corners was found and identified; the configuration of the

ground is the same, and the limestone point or peak is a prominent natural object to which the claim is tied in both instances. Moreover, it was admitted upon the trial that both surveys were the same upon the ground, and there is thus conclusively established the fact that the property surveyed under the old survey and described in the patent is the same property surveyed under the new survey and now claimed by respondent.

The erroneous connecting-line which appellant insists should exclusively control in the location of this land, and which, as will hereinafter be shown, is in no wise controlling, was itself not even a surveyed line, and is not entitled, therefore, to the consideration which a surveyed line should carry. The line is, according to the field-notes, a "calculated" line, and was computed after running nearly five miles of traverse over rough country and after crossing two rivers by triangulation while running the traverse. By subdivision 2 of section 2077 of the Code of Civil Procedure, the rule for construing the descriptive part of a conveyance of real property when the description is doubtful, and there are no other sufficient circumstances to determine it, is as follows: "When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount." And the decisions are in perfect accord with the rule here set forth. Thus in *Los Angeles etc. Co.* v. *Thompson,* 117 Cal. 594, it is said: "The field-notes of a survey are not limited to the courses and distances set forth therein, but include also the monuments referred to, and all the objects mentioned by which the lines of survey can be ascertained. . . . If there is any discrepancy between the monuments and the courses and distances, the monuments must prevail, and, if these monuments can be ascertained, the lines connecting them will be the lines of the tract, irrespective of their variation from the lines given by the courses and distances. . . . The description is sufficiently definite if the entire body of field-notes afford sufficient data for its location." In *Bell* v. *Skillicorn,* 6 N. Mex. 399, the action was ejectment to recover possession of a mining claim brought by one claiming under a patentee of the United States. The patent was introduced in evidence, and

the defendants contended that the surface ground claimed by the plaintiff and that described in the patent were not the same. The court, however, said: "It is also contended by defendants in error that plaintiff's claim as described in the patent, in its call for connection with the public lands, would, if so surveyed, throw the plaintiff's location in another place, and the defendants would not, if located in accordance therewith, be guilty of having entered upon the same. The rule in determining the exact locality of a tract or boundary of land is, that recourse must be first had to natural objects; second, to artificial marks; and third, to courses and distances. The court admitted this patent in evidence and followed the rule strictly in an instruction to the jury in regard to it, as follows: 'If plaintiff's vein is within the side-lines formed by artificial monuments which were placed around the same at the time of the survey thereof for patent, it would make no difference whether said monuments and survey were properly connected with the surveys of the public lands, but the location of said monuments would control and determine the location of said vein or lode.' This instruction states the law correctly, and, as admitted, seems to settle the description of the land in the patent to be the *locus in quo* of the land in question." The case of *Cullacott* v. *Cash Gold and Silver Mining Co.*, 8 Colo. 179, is almost identical in its facts with those presented in the case at bar. There, as here, an entry was made upon patented ground which was in the possession, and known to be in the possession, of the owners of the patent title. There, as here, notwithstanding the fact that the ground was so held, the entry was sought to be justified because of a like error in the patent description. The court said: "The only perceivable excuse for this appropriation of the property is a misdescription of the patented premises as to courses and distances, the principal error being in the course and distance of corner No. 1 (government corner). The appellants, relying upon this error to justify their appropriation of the patented premises, gravely contended that the ground called for in the patent lay wholly outside of their location. But the identity of the patented premises does not depend upon courses and distances alone. There were other calls in the patent. It calls for granite rock in mound of stones at

each of the four corners of the surface-ground. The plat incorporated as a part of the description shows the location of the discovery-shaft, and another important fact is, that the name of the lode or mine is given. . . . The controlling question in the case is, Were the premises in controversy properly and sufficiently identified as the premises described in the patent? . . . The rule is that monuments will control courses and distances, and all the authorities on the subject assign courses and distances the lowest place in the scale of evidence, as being the least reliable. So the return of survey, even though official, must give way to the location on the ground, while the patent, the final grant of the state, may be corrected by the return of survey, and if it also differs, both may be rectified by the marks upon the ground. . . . There was no question of conflicting lines or surveys here, but simply a question of identifying the patented premises as a whole. The effect of the doctrine contended for by the appellants would be to declare the grant void for uncertainty. But it is only after the entire description in a patent has been considered and found so inaccurate as to render the identity of the grant wholly uncertain that the grant is held to be void. It is plain that no such consequence could result here, for the identity of the property in controversy, as the Cash Lode, was known to the witnesses of both sides.''

It thus appearing that there was a sufficient description within the patent itself, by which the *situs* of the patented land could be accurately established, the land covered by the patent was not open to location at the time when appellant entered upon it. It becomes unnecessary, therefore, to consider further matters established, as that appellant's entry was with full knowledge of defendant's possession and claim of ownership. Nor can any weight be attached to appellant's objection that no proof was made showing that the Pitt River Iron Ore Mine was located or its boundaries marked upon the ground, or that location notice was recorded, or that any discovery of mineral had ever been made within the limits of the claim, etc. All of these matters are completely disposed of and conclusively eliminated by the issuance of the patent itself. As is said in *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636, ''A patent duly signed, countersigned, and sealed not

merely operates to pass the title, but is in the nature of an official declaration, . . . that all the requirements preliminary to its issue have been complied with. The presumptions attending it are not open to rebuttal.'' And in *Los Angeles etc. Co.* v. *Thompson,* 117 Cal. 601, it is said the patent's issuance by the government foreclosed all collateral attack upon the regularity and sufficiency of any of the steps or proceedings upon which it depended. And still further in *Calhoun Gold Mining Co.* v. *Ajax Gold Mining Co.,* 182 U. S. 499, it is declared that the patent is proof of a discovery of mineral. For the like reason, appellant is not in a position to raise objections to the sufficiency of the mesne conveyances from the patentees to the respondent. The patent itself establishes the fact that the California Iron Mining and Smelting Company was a corporation. Its deed is proof of the existence of the company which made it, being in all respects regular in form. The property is identified in the deed, since it follows the patent description. And, finally, so far as the objection that it is not shown that the officers of the company had any authority to execute the deed, nor that the stockholders ever authorized the making of a deed, the act of April 23, 1880, is an act for the protection of stockholders in mining companies, and appellant, to raise this question, must connect himself as a stockholder, or in some other way, with the corporation's title. Here he stands in a position of hostility to it. A corporation deed unauthorized by the stockholders is void only as to stockholders and those connected with the corporation title. (*Beecher* v. *Marquette etc. Co.,* 45 Mich. 103; *Alabama Iron etc. Co.,* v. *McKeaver,* 112 Ala. 134; *Bishop* v. *Kent etc. Co.,* 20 R. I. 680; *Wood* v. *Corry Water Works Co.,* 44 Fed. 146; *Manhattan Hardware Co.* v. *Phalen,* 128 Pa. St. 110; *Paulding* v. *Chrome Steel Co.,* 94 N. Y. 334.) The evidence of Morgan, to which objection was made, was properly admitted as tending to show the bad faith of the appellant in making the location and his knowledge of the condition of defendant's land and its title.

As to the other findings of the court objected to, none of them affect, or could affect, appellant's rights, since under the finding of title in defendant already discussed plaintiff's location was absolutely void.

The judgment and order appealed from are therefore affirmed.

McFarland, J., and Lorigan, J., concurred.