[Civ. No. 1836. Third Appellate District.—May 28, 1918.]

HECTOR WILLIAMSON, Appellant, v. HENRY C. PRATT, Respondent.

BOUNDARY — CONSTRUCTION OF DEED BY PARTIES — CONSIDERATION BY COURT.—In determining the location for a boundary line, the construction placed upon a description in a deed, as shown by the acts and conduct of the grantor and his grantees for a long period of time with relation to the line, is entitled to the gravest consideration, unless the terms of the deed are clear and certain to the contrary.

ID.—DEED—ROAD AS BOUNDARY—PAROL EVIDENCE.—In an action in ejectment to determine a boundary line, where a deed gave a road as a boundary, but it was not clear what road was intended, it was proper to show by parol evidence the identity of the road.

ID.—MONUMENTS CONTROLLING OVER COURSES.—When monuments mentioned in a deed are identified, they control both courses and distances given, whether they were seen by the parties to the deed or not.

ID.—FIXING OF LINE BY AGREEMENT—ESTOPPEL.—Where the boundary line between the lands of contiguous owners is doubtful or ·uncertain and they by parol agreement fix and determine a dividing line between their respective tracts, said line being marked by the erection or maintenance of a fence or other equivalent structure along it, and thereafter the parties hold and occupy their respective lands to the boundary as so agreed on, the accuracy of such boundary line cannot be subsequently questioned by the parties establishing it, or by those claiming under either of them.

APPEAL from a judgment of the Superior Court of El Dorado County. N. D. Arnot, Judge.

The facts are stated in the opinion of the court.

Abe Darlington, for Appellant.

H. D. Jerrett, for Respondent.

BURNETT, J.—The action is in ejectment, the land in dispute being situated in El Dorado County and consisting of a strip 71.8 feet wide at one end and running to a point 1231.4 feet distant, containing 1.7 acres, of which plaintiff claims to be the owner.

Both parties to the action claim title from Catherine Stronach, who, on the twenty-second day of April, 1901, was the owner of all of a certain tract of land designated as lot 2. On said date she conveyed to her son, Wallace C. McBeath, a portion of said lot 2 described as follows:

"Commencing at the quarter section corner on the north boundary of section one in township 10 north of range 9 east, M. D. M.; thence south 18 chains and 41 links to a post on west side of road; thence north 22 degrees west 19 chains and 95 links to post on east side of road; thence west 7 chains and 50 links to place of beginning, containing 20.86 acres more or less."

On the 9th of April, 1902, said McBeath and his wife conveyed said land to one Schoenagle, and, on the 27th of August, 1910, said Schoenagle conveyed it to plaintiff, Williamson.

On June 6, 1908, Catherine Stronach conveyed to Catherine A. and Bruce McBeath (another son) another portion of said lot 2, described as follows:

"Situate in section one, township 10 north of range 9 east, Mt. Diablo base and meridian, bounded west by Weber Creek Road, east by the Coloma wagon road; north by the lands of Menardi and south by the lands of C. P. R. R. Co., containing 17 acres more or less."

Subsequently, Catherine A. McBeath conveyed her undivided one-half interest in said land to Bruce McBeath, who, on December 3, 1909, conveyed all his interest therein to defendant, Pratt. The action was commenced March 8, 1915.

The Weber Creek road, referred to in the last-mentioned deeds, was located through lot 2 in 1885 and there has been no change in its location since 1891 or 1892. Defendant has had possession of the disputed tract since acquiring title to it, has kept it fenced, and has cultivated portions of it for three or four years.

C. H. Wildman, county surveyor of El Dorado County, was called as a witness by plaintiff. He described the manner in which he made a survey of the property called for by the deed to plaintiff. He stated that there was on the ground nothing to indicate where the starting point mentioned in the deed was, so he established a quarter-section corner according to the rules of the general land office. From there he ran the west line to the southwest corner. The second call in the deed is, "east 15 chains and 5 links to a post on *west* side of road." The surveyor stated that he ran this line to a point on the *east* side of the Weber Creek road, which constitutes the southeast corner of the property in controversy and which is 71.8 feet east of the fence of defendant; that if the stake was set on the west side of the road, "the survey would not close or come anywhere near closing."

It is argued by appellant that the insertion in the description of the word "west" was an error and that it should have been "east." Or, if it was intended as written, it is still west of a road which is approximately 450 feet east of the Weber Creek road.

Respondent, on the other hand, claims that no error was committed and that it was the intention of Catherine Stronach, by the use of the word "road" twice in said description and by the use of the term "Weber Creek Road" in the description in the second deed, to make said Weber Creek road the boundary line between the two properties.

The testimony of the tax collector showed that from 1911 onward the following property was assessed to defendant and the taxes thereon levied paid by him: "Lot 2 of northeast quarter, lot 3 of northwest quarter, less 20.86 acres of Lot 1"; it was stipulated that said 20.86 acres had been assessed to plaintiff and his grantors.

While it may be conceded that the surveyor's testimony is strongly in favor of appellant's contention, and that, if we follow the courses and distances prescribed in the deed to plaintiff, we reach the conclusion that he has the legal title to the property in controversy, yet from a review of the whole record, we are entirely satisfied that the evidence is sufficient to support the finding of the lower court, and that the decision is just and should be upheld.

In the first place, the parol evidence, which was admitted without objection, shows without any conflict that the intention of the original grantor, Mrs. Catherine Stronach, was to make the said Weber Creek road the eastern boundary line of the tract conveyed by her to her son, Wallace C. McBeath. The latter testified: "I owned the land back of the road a short distance, and my mother owned a strip along in front of my land and I wanted a frontage out on the road, and I bought the piece lying between my piece and the county road to get a frontage out on the road, and that is what she described in the deed."

He further stated that a survey was made for the purpose of getting the description to put in the deed, and that the present county road (the Weber Creek road) was there at the time. Furthermore, that what is marked on the map, "approximate course of old road," was not traveled at all in his day.

Again, it is perfectly plain that the parties understood and so interpreted the deed as conveying the land only to said Weber Creek road. This is shown by the fact that the grantee took possession of such tract and no more, and afterward the grantor conveyed the disputed tract to another son; and

fences were built and the land was cultivated and improvements made thereon in accordance with the theory that the Weber road was the boundary line. Moreover, during all the years from 1901 to 1915 no claim was made by anyone that the description in the deeds to plaintiff and to his predecessors in interest covered the land in controversy. Indeed, from the acts and declarations of the parties in interest, there can be no doubt whatever that they understood and intended the deed to convey to said road as was stated by said Wallace C. McBeath. It cannot be doubted that the construction placed upon a description in a deed, as shown by the acts and conduct of the grantor and his grantees, and the manner in which they have exercised their respective rights under their deeds for long periods of time with relation to a boundary line, is entitled to the gravest consideration in the determination by a court of the location of such line. (*Hamm* v. *City of San Francisco,* 17 Fed. 119; *Truett* v. *Adams,* 66 Cal. 218, [5 Pac. 96].)

Of course, if the terms of the deed were clear and certain to the contrary, no such significance could be attached to the conduct of the parties. If the description be so definite and accurate as to exclude doubt, it must be applied as found, notwithstanding a different construction may be indicated by the acts and declarations of the parties. But such is not the case here. The deed contains a reference to a natural monument, that is, to a road, and the deed itself does not make it plain what road was intended. It was proper, therefore, to show by parol evidence the identity of this object. In *Colton* v. *Seavey,* 22 Cal. 497, it was held that "parol evidence is admissible to explain the location of the objects mentioned in the description of a deed, and thus fix the boundary lines of the tract conveyed." The proposition, though, is elemental, and needs no further discussion. It is equally plain that the conduct and declarations of the parties to which we have referred leave no room for doubt that the Weber road was the monument referred to in the deed.

But it is conceded that, if the call in the deed, "thence South 18 chains and 41 links to a post on West side of road," is to be construed as designating a post in the west side of the Weber road, then the deed does not include the land in controversy. The evidence being such that we have a right to read that call as though it read, "thence South 18 chains

and 41 links to a post on West side of Weber road," the familiar question arises as to the relative importance of monuments and of courses and distances in the construction of a deed. The proposition needs only to be stated to suggest an answer. "When monuments mentioned in a deed are identified, they control both courses and distances given, whether they were seen by the parties to the deed or not." (*Anderson* v. *Richardson,* 92 Cal. 623, [28 Pac. 679].)

This rule is adopted because it is most likely to lead to the discovery of the intent of the parties. (*Piercy* v. *Crandall,* 34 Cal. 334.)

All authorities on the subject assign courses and distances the lowest scale in evidence as being least reliable. (*Galbraith* v. *Shasta Inn Co.,* 143 Cal. 94, [76 Pac. 901].)

If we follow this well-established rule we may find, as stated by the county surveyor, that the distances do not correspond with two of the calls in the deed, and that there is a variation in one of the courses, but this is not of commanding importance. We know that such mistakes are quite frequent, and it is no reflection upon the capacity of said witness to suggest the possibility of a mistake in his survey. At any rate, he admits that he found no monument marking the N. W. quarter section corner, which was the initial point of the survey, and that he had to locate it by means of the other corners which were definitely marked. But, assuming that his survey was substantially accurate, we do not know that said corner was similarly located in and by the survey upon which the deed was based.

The one who made the first survey was not called as a witness, but it must be said that there is substantial evidence that his delineation of the tract to be conveyed did not pass east of the Weber Creek road. Bruce McBeath testified that he was present at the time of the earlier survey, and in reply to the question, "Do you remember of this survey crossing the present county road?" he answered, "No, it did not cross it; it came to a stake west of the present county road." It is quite clear that the surveyor could not have located the land as claimed by appellant without going across said road, and the testimony furnishes strong confirmation of the theory that a mistake was made either by him in the earlier survey or by the county surveyor in the later one.

However that may be, we ascertain the controlling monument, and we have no difficulty in shortening the lines and changing slightly one of the courses to make the actual location on the ground correspond with the unquestionable intention of the parties to the deed.

Moreover, conceding, for the sake of argument, that according to the terms of the deed, the location of the eastern boundary line was and is doubtful, we must assume that this uncertainty was known to Catherine Stronach and her sons, and that they all agreed upon the Weber road as the boundary line between the two tracts. While no one has testified definitely to an express agreement to that effect, such would be a fair inference from the conduct of the parties. They established the road as a boundary line, built the fences accordingly, and Pratt's predecessor made improvements upon the disputed tract. And it was not until some seven years after Bruce McBeath had entered into possession of the eastern tract that the established line was questioned by Wallace McBeath's successor in interest. Under such circumstances, it is clear that he is estopped from maintaining the claim that the Weber road is not the boundary line.

In *Loustalot* v. *McKeel*, 157 Cal. 640, [108 Pac. 710], it is said: "The rule universally sustained by the authorities is that where the boundary line between the lands of contiguous owners is doubtful or uncertain and they by parol agreement fix and determine a dividing line between their respective tracts, said line being marked by the erection or maintenance of a fence or other equivalent structure along it, and thereafter the parties hold and occupy their respective lands to the boundary as so agreed on, the accuracy of such boundary line cannot be subsequently questioned by the parties establishing it, or by those claiming under either of them"; citing cases.

Other circumstances might be mentioned in confirmation of the soundness of the lower court's conclusion, but we deem it unnecessary to go further.

Viewing the whole record, we see no substantial merit in appellant's claim, and the motive for his conduct in the matter was probably not inaptly expressed by the trial judge in the statement: "He wants to *hector* Pratt."

Manifestly, someone has blundered in the survey of the land.

Judge Cooley, in *Diehl* v. *Zanger*, 39 Mich. 601, said: "Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey, without disclosing errors. This is as true of government surveys as of any others, and if the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischief that would follow would simply be incalculable and the visitation of the surveyor might well be set down as a great public calamity."

He proceeds to point out the importance of recognizing the established landmarks in locating lot and boundary lines, and concludes that a good engineer will not overthrow boundaries that have been settled in accordance with the principles of law.

The county surveyor herein, though, may not have been censurable for trying to locate the boundaries in accordance with the courses and distances, as he was probably not in a position to give due consideration and significance to the important circumstances to which we have adverted.

At any rate, we feel satisfied that the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1918.