# Barrett & Co. v. Pollak Co. *et al.*

# H. B. Claflin & Co. *et al.* v. Barrett & Co.

*Bill in Equity to set aside General Assignment, and Collusive Attachments on ground of Fraud.*

1. *Insolvent corporations; assets of, not a trust fund for creditors; equity jurisdiction.*—The mere fact that a corporation has become insolvent does not convert its assets into a trust fund for its creditors; nor confer upon a court of equity jurisdiction, to administer upon its property for the benefit of its creditors, any more than in the case of an individual.

2. Code 1886, § 1664, subdivision 7, prohibiting the pledge of its property by a corporation except in the mode therein prescribed, was enacted for the benefit of its stockholders and can not be invoked by a creditor of the corporation.

3. *Assignment; unlawful preferences do not vitiate.*—Where unlawful preferences are sought to be created by the terms of a general assignment, the validity of the assignment is not affected; the trust is preserved but the preferences sought to be given are annulled.

4. *Same; fraudulent intent of maker alone not sufficient to avoid; subsequent maladministration of trust fund by the assignee, while a cause of removal does not affect validity of trust deed.*—Although the maker of a general assignment executes the same with actual fraudulent intent, the trust deed will not be affected thereby, unless such fraudulent intent was shared at the time by the assignees, or by the general creditors provided for by the assignment; nor will the subsequent maladministration of the trust funds by the assignees avoid the assignment, though it would furnish cause for their removal, by a court of equity, on proper proceedings for that purpose.

[Barrett & Co. v. Pollak Co. *et al.* H. B. Claflin & Co. *et al.* v. Barrett & Co.]

CROSS-APPEALS from Montgomery Chancery Court.

Heard before Hon. JERE N. WILLIAMS.

The original bill in this case was filed by H. W. Barrett & Co. on March 1, 1894, and several amendments were afterwards filed. The bill as amended alleges that Pollak Co. was a mercantile corporation; that prior to January 8, 1894, it had been conducting a large business in the city of Montgomery, Ala. That I. Pollak, the president of the corporation owned substantially all the stock therein, and practically controlled the entire business management. That on the 6th day of January, 1894, said corporation had become utterly insolvent, and its indebtedness at that time amounted to more than two hundred thousand dollars, and the assets of said corporation consisted in a stock of goods of the value of not less than $50,000, and not more than $109,000, besides certain outstanding accounts and notes, of uncertain value, and the fixtures in the store occupied by it. The value of the assets of the corporation being much less in amount than its indebtedness. That said Pollak Co. and said I. Pollak, with full knowledge of the insolvency of said corporation, caused a deed of assignment to be drawn up and signed ready for delivery, wherein was recited what purported to be a resolution of the board of directors of said corporation, stating that said corporation was insolvent and unable longer to continue in its business, its stock in trade having been attached. That after the signing of said deed of assignment but prior to its delivery, said I. Pollak procured collusive attachments to be issued by Josiah Morris & Co. and H. B. Claflin Co. against said Pollak Co.; the purpose of said Pollak, as was fully known and understood by them, being to give a preference to said Josiah Morris & Co. and said H. B. Claflin Co. over the other creditors of said corporation, as well as to relieve said I. Pollak from personal responsibility as indorser or guarantor of the debts on which said attachments were sued out. That the agreement that said attachments were first to be sued out and levied, and should then be followed by the delivery of said deed of assignment was made between said I. Pollak, Josiah Morris & Co., H. B. Claflin Co. and W. K. Pelzer, one of the trustees named in the deed prior to the issuance of said attachments. That said I. Pollak, W. K. Pelzer and F. M. Billing (who was conducting

the business of Josiah Morris & Co.) were intimate friends and were in confidential relations with each other. That in order to avert suspicion of the attachments planned to be sued out in behalf of H. B. Claflin Co. and Josiah Morris & Co. the latter procured Cane, McCaffery & Co., another creditor of Pollak Co. to sue out the first attachment, the said Billing agreeing to make the necessary bond. That this arrangement was also known and agreed to by said I. Pollak, W. K. Pelzer, and S. Roman. That all of said three attachments were issued at the same time, supported by affidavit of the same ground, and with F. M. Billing on each of said attachment bonds. That by agreement between said attaching creditors the sheriff was instructed to indorse on attachment of Cane, McCaffery & Co. that it was received and levied at 8 :15 A. M., and on attachment of Josiah Morris & Co., received and levied 8 :16 A. M., and on attachment of H. B. Claflin Co., received and levied 8 :17 A. M. Each of said attachments were levied on the entire stock of goods of said Pollak Co. At 8 :30 A. M., of the same day, in accordance with the preconcerted arrangement between said I. Pollak, and said attaching creditors, a deed of general assignment was filed in the office of the probate judge of Montgomery county, by which all the assets of said corporation were conveyed to S. Roman, and W. K. Pelzer, subject to the landlord's lien for rent, and to the lien of said attaching creditors. The bill further avers that the ground set out in the affidavit in each of said attachments, was that the defendant had money, property or effects liable to satisfy its debts, which it fraudulently withholds ; that there was no foundation in fact for such affidavit, except the voluntary admission thereof by said Pollak made for the purpose of procuring said attachments. That it was understood, at the time of the issuance of said attachments, between said Pollak Co. and said attaching creditors in what proportion the proceeds should be respectively divided between them. It is further alleged that on January 13, 1894, S. Roman, one of the trustees under the assignment, sued out an attachment against said Pollak Co. for the rent due him on the storehouse occupied by said corporation, amounting to the sum of $9,727.44, and that as such attaching creditor his interest is adverse to the rights of

the creditors of said Pollak Co. That the recital, in said deed of assignment that said stock of goods had been attached was inserted to prevent Pelzer and Roman, as assignees, from making defense to said attachments. That on, or before January 8, 1894 said Pollak Co. attempted to pledge certain choses in action to said Josiah Morris & Co. and H. B. Claflin Co. as collateral security for the debts due by it to them, and said deed of assignment recites that the interest of said Pollak Co. in said choses in action was that of a pledger  The bill avers that such hypothecation of said choses in action was null and void as against the creditors of Pollak Co., and that the recital of such hypothecation in the deed of assignment was intended to preclude the assignees from raising any question as to the validity thereof. It is further averred, that the fact that Pollak Co. was insolvent and unable to continue its business, and had in fact abandoned the purpose of further carrying on its business, made the assets of said corporation a trust fund for all its creditors, which should be administered by a court of equity, and that all acts of said corporation, or of said Pollak as manager thereof, after the purpose was formed of abandoning the continuance of its business by reason of its insolvency, were null and void as to the creditors of said insolvent corporation; that said deed of assignment being a part of the unlawful scheme to prefer said attaching creditors is also void as to creditors, as are also the preferences sought to be created by said attachments. It is further alleged that under an agreement between Pollak Co. said attaching creditors, and said assignees, the sheriff is about to sell all the goods of said Pollak Co. at private sale, to the end, and for the purpose of carrying out the plan to pay off said attaching creditors in full to the extent of the proceeds of such sale, and thus consummate the designed unlawful preference. That said Pelzer and Roman, the assignees under the trust deed, have with full knowledge aided and abetted in the scheme to create such unlawful preferences, and are for that reason unfit to act as the representatives of the general creditors of said Pollak Co. That the hypothecation of said chosen in action by said Pollak Co. to said Josiah Morris & Co. and H. B. Claflin Co. was void because it was

·not made with the consent of the holders of the larger part of the capital stock expressed at a meeting of the stockholders called for that purpose in the manner and mode prescribed by law.   The prayer of the bill is that the Chancery court will take possession of the assets of said Pollak Co. and administer the same for the benefit of the creditors of said corporation, and that the deed of assignment be declared void ; and that each of said assignments be set aside and avoided, and that a receiver be app)inted ; and for general relief. Motions to dismiss the bill for want of equity were interposed by Josiah Morris & Co. and H. B. Claflin Co. which were overruled by the chancellor, and from which decree they respectively appeal.   Pollak Co. interposed demurrers to the bill, because it was not sworn to according to law ; and because said bill was multifarious, which demurrers were sustained by the court ; from which decree complainants appeal.

TROY & WATTS for H. W. Barrett & Co.

The bill in this case is not one of the kind required by law to be sworn to.—1 Daniel Ch. Pleading and Practice, pp. 449 and 655.

The bill is not mulifarious.—Daniel's Ch. Pl. & Pr. 383 *et seq*. and 392 ; Foster's Fed. Pr. 160 ; *Wilkinson v. Bradley* 54 Ala. 677 ; *Stone v. Knickerbocker*, 52 Ala. 589 ; *County of Dallas v. Timberlake*, 54 Ala. 403 ; *Tindall v. Drake*, 51 Ala. 574.

The motions to dismiss the bill for want of equity were properly overruled.   When a corporation becomes insolvent ; becomes unable to longer continue its business ; becomes unable to further prosecute the purposes of its creation, it may be said to have suffered death, and its assets became a trust fund for its creditors, similar by analogy to the case of the death of an individual. —2 Morowetz on Corp. §§ 861–863, 803, & note ; 1026 and cases cited ; *Bank* of *St. Mary's v. St. John, Powers & Co.*, 25 Ala. 566 ; *Branch Sons & Co. v. M. & W. P. R. R. Co.* 59 Ala. 139 ; *Carey v. Wadsworth*, 99 Ala. 66 ; *Sutton Mfg. Co. v. Hutchinson*, 63 Fed. Rep. 496.

The attachments by Josiah Morris & Co., and H. B. Claflin Co. being collusive, are void against the other

creditors of Pollak Co., and secure no priority of lien. *Cartwright v. Bamburger, Bloom & Co.*, 90 Ala. 409, and cases cited ; *Rice v. Less,* 10 Ala. 5298 ; *Durr v. Jackson*, 59 Ala. 203 ; *Gabel v. Hammerwell*, 44 Ala. 336.

TOMPKINS & TROY, *contra.*
No brief came into the hands of the reporter.

HEAD, J.—In *Pollak Co. et al v. Muscogee Manufacturing Company*, at the present term, we practically settled the controlling questions presented by these appeals. In that case the purpose, in one phase of the bill, was to have three specified attachments, and the levies thereof, upon goods of Pollak Company, a corporation, alleged to have been invited and procured by the debtor itself, and certain pledges of choses in action made by the debtor to two of those attaching creditors, declared parts of a general assignment executed by a debtor shortly afterwards ; and in another phase to have the attached property administered as a trust fund for the benefit of creditors—the trust character arising, as contended, from the insolvency of the debtor corporation. Like that, the present bill, which is filed by a creditor of the same corporation, in one of its phases, seeks to have the property of the corporation distributed to all its creditors, as a trust fund of the same character ; and, in another phase, unlike the other bill, seeks to annul both the attachments and the assignment, as fraudulent and void, and have the property administered by a receiver of the court's appointment. The pledges of choses in action are sought to be invalidated for non-conformity, by the corporation, to the provisions of subdivision 7 of section 1664 of the Code of 1886, requiring a certain consent of stockholders, manifested in a prescribed way, to authorize a pledge of its property by a corporation. There are, in the amendments to the bill, many averments of fraud and collusion on the part of the assignors, the assignees, the sheriff, and the attaching creditors, all of whom are parties to the bill ; but they all relate to the administration of the property subsequent to the levies of the attachments, and the execution of the assignment. They are acts of spoliation and maladministration, committed by these persons, which it would

be within the province of a court of equity to redress, at the suit of a creditor who establishes by his bill and proof an equity to have the court take charge of the administration of these trustees, or to set aside the trust entirely, by reason of fraud in its creation, or other vitiating circumstances annulling it; or, affirming the validity of the trust, to set the assignee aside for unfitness or maladministration subsequent to their creation. We have seen that the complainants' standing in court, if they have any, rests upon the averments that the attachments and assignment, in respect of the property levied upon or assigned, are vitiated by fraud; or that the property was a trust fund for creditors which rendered the attachments and assignment ineffectual to impair the rights of complainants; and as to the choses in action pledged, that the pledges are invalid by reason of nonconformity to the statute aforesaid. If there is no equity in either of these alleged grounds of relief, the court will not take cognizance of the alleged acts of maladministration occurring subsequent to the creation of the trusts, for the reason that the complainants have not by their bill· given themselves a standing in court, by which they can invoke the exercise of that jurisdiction. Repudiating the trusts, and failing to sustain that position, they must need go out of court.

As to the trust character of the property of the corporation, by reason of its insolvency, we settled that question, in an exhaustive and unanswerable opinion by Justice McClellan, in *O'Bear Jewelry Co. v. Volfer*, 106 Ala. 205; and followed that case in *Pollak Co. v. Muscogee Mfg. Co.*, *supra*, repudiating the trust fund doctrine. There are some explanations contained in the separate opinion of Justice Coleman, in the *O'Bear* case, which were not passed upon by the other members of the court.

As to the pledges of choses in action, the statute relied upon (sub-div. 7, section 1664, Code of 1886) was enacted for the protection of stockholders, and a creditor cannot invoke it.—*Nelson v. Hubbard*, 96 Ala. 238, and cases therein cited at page 253, particularly; *Beecher v. Marquette Rolling Mill Co.*, 45 Mich. 103, which we quoted and approved. There is no equity, therefore, in this ground of relief.

[Barrett & Co, v. Pollak Co. *et al.*  H. B. Claflin & Co. *et al.* v. Barrett & Co.]

In the *Muscogee Mfg. Co.* case, *supra*, we ruled, upon substantially the same averments of facts in reference thereto, as are averred in the present bill, that the issuance and levies of the attachments were mere forms resorted to by the attaching creditors and the debtor, for the purpose of giving to those creditors, unlawful preferences of security over the general creditors who were to be provided for by the contemplated general assignment, which was executed a few minutes afterwards ; and that they were and must be treated as parts of the general assignment.   That being their effect, the statute (Code of 1886, § 1737), merely annuls the preferences, preserving the validity of the assignment as a trust for all the creditors ; and it makes no difference that the preference was attempted to be created with an actually fraudulent intent.—*Holt v. Bancroft*, 30 Ala. 193 ; *Danner v. Brewer*, 69 Ala. 191 ; *Rochester v. Armour*, 92 Ala. 433, and *Preston v. Spaulding*, 120 Ill. 208 (10 N. E. Rep. 903) therein quoted and approved.   It is by the mandate of the statute, that the unlawful preference is to be merged, so to speak, in the assignment.   Suppose the preference had been attempted to be created by the terms of the assignment itself, it is manifest, no extent of actually fraudulent intention inciting its creation, would, in view of the statute, annul the entire assignment.   The only purpose of the parties was to create a preference.   In the very nature of fraud, that purpose was necessarily fraudulent, actually or constructively, for the reason that it designed to violate the law, to the injury of the general creditors.   The validity of the assignment not being assailed for any other cause, it results, that there is no equity in any of the grounds of relief set forth in the bill.

In discussing the validity of the general assignment in respect of the charge of fraud, we do not overlook the fact that the last amendment filed alleges that said Ignatius Pollak (who under the averments of the bill was, essentially the corporation itself) not only did the acts of conversion and maladministration after the assignment was executed, which are charged against him and others in the bill, with the fraudulent intent and purpose of re-acquiring ownership and possession of the goods in the manner he is alleged to have acquired the same, but that he, the said Pollak, also procured the issuance and

levy of the attachments, and *executed the general assignment* to Pelzer and Roman, with the same fraudulent intent and purpose; and we think it can not be doubted, that this allegation, admitted to be true, would have stamped both the attachments and general assignment as fraudulent and void, and given the bill equity for the relief it seeks, if it had been further averred, that the assignees, at the time they accepted the assignment, or the general creditors, provided for by the assignment, knew of, or participated in, that fraudulent intent. But, it is the rule in this State, that the secret fraudulent intent of the assignor in making a general assignment for creditors, unknown to the assignee at the time they accept the trust, and to the creditors, does not authorize one of the creditors to set aside the assignment for fraud. *Truss v. Davidson*, 90 Ala. 359. This is the way we understand the averments of the bill.

The motions to dismiss the bill for want of equity ought to have been sustained. We deem it unnecessary to consider the rulings of the court upon the demurrers to the bill; for whether well or illy taken, there was no harmful error in sustaining them, since the bill ought to have been dismissed for want of equity. As we can not say, however, that the bill may not be amended so as to give it equity for the relief it seeks, and give the complainants a standing in court, to have the said alleged subsequent acts of maladministration investigated and corrected, we remark that we do not consider the bill, if so amended, multifarious; nor is it necessary that it be sworn to. The decree, on the appeal of complainants, will be affirmed; and on the appeal of respondents, will be reversed and a decree here rendered dismissing the bill for want of equity, unless within thirty days it shall be so amended as to give it equity, with power in the chancery court, or chancellor in vacation, to extend the time on sufficient showing. The cause will be remanded.

Reversed, rendered and remanded.