# Anderson *et al. v.* Bullock County Bank.

*Bill in Equity to have Cancelled and Annulled a Mortgage executed by a Corporation to secure Corporate Bonds.*

1. *Corporation; failure to comply with statutory requirements in issuance of bonds not available to creditors.*—The failure of a corporation to comply with the statutory requirements as to notice for the issuance of corporate bonds and the execution of a mortgage to secure the same, is not available to creditors of the corporation; the statutory provision (Code of 1896, § 1256, subd. 7), being intended for the protection of the stockholders simply.

2. *Same; purchase of bonds by president of corporation; rights of creditors.*—The mere fact that the president of a corporation,

[Anderson *et al.* v. Bullock County Bank.]

with the consent of the Board of Directors and the stockholders, purchased corporate bonds of the face value of $18,000 for $16,500, does not, of itself, render the bonds invalid as usurious or fraudulent, or furnish any ground of complaint to creditors, whose debts were not contracted until several years after the issuance and purchase of said bonds..

3. *Same; same; same.*—Where the president of a corporation owns its valid bonds, which are past due, and in accordance with an agreement between him and a third person to exchange the bonds of the corporation for other property, a resolution, favored by the president, is passed at a meeting of the stockholders, authorizing the issuance of new bonds to retire those past due held by the president, and the execution of a new mortgage to secure the same, the mere fact that the new bonds purport to be a series of a larger amount than was authorized by the resolution, and the mortgage also purports to secure such larger amount, does not, of itself, manifest a simulated, fictitious debt or render such bonds and the mortgage securing the same invalid as against subsequent creditors of the corporation; nor can such subsequent creditors complain of the exchange by the president of such new bonds with a third person for other property.

4. *Same; right of subsequent creditors to have decree foreclosing mortgage securing corporate bonds set aside.*—Where a bill filed by the holders of bonds issued by a corporation avers default in the payment of interest and the happening of the contingency authorizing foreclosure proceedings as provided by the mortgage securing said bonds, and it is further averred in said bill that the corporation had become insolvent and its officers had ceased to give it any attention, and the property was being wasted for want of care, and that all the bondholders united in demanding the foreclosure of the mortgage, a decree is rendered ordering the foreclosure of the mortgage and providing that the property of the corporation shall not be sold for less than the amount of the bonds, creditors of said corporation, whose claims did not accrue until the year subsequent to the issuance of said bonds and the execution of the mortgage securing them, can not have said decree of foreclosure set aside and annulled in the absence of averments showing that the foreclosure proceedings were fraudulent and collusive.

5. *Same; right of insolvent corporation to prefer its officers in payment of debt.*—An insolvent corporation may transfer its property to its officers in payment of *bona fide* debts due them, though it thereby prefers such claims to those of other creditors.

[Anderson *et al.* v. Bullock County Bank.]

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellants against the appellees. The averments of the bill are sufficiently stated in the opinion.

In paragraphs 12 and 13 it is alleged that about February 15, 1897, the officers and directors ceased to look after the affairs of the corporation; that the corporation was insolvent and owed $10,000 in addition to its bonded debt; that J. L. Paulk and W. M. Pitts were engaged in a mercantile business under the firm name of Pitts & Paulk; that said corporation was indebted to Pitts & Paulk in the sum of about $2,000; that it was indebted to W. M. Pitts in about the sum of $2,500; that it was indebted to L. Bernheimer in about the sum of $3,000; and that J. A. Paulk, its president, was indebted to Pitts & Paulk in about the sum of $2,000; and was also largely indebted to said Bernheimer on his individual account. That a short time prior to the time when the corporation ceased to do business, it had on hand a large quantity of cotton seed meal, hulls and cakes, which were substantially all of its property over and above the property covered by the mortgage; that the said officers of the corporation with the intent to prefer the payment of the debts due to themselves, and the debts due to Pitts & Paulk and to the said Bernheimer, sold a portion of the said product and paid the salaries due to themselves with the proceeds, and turned over to Pitts & Paulk, W. M. Pitts and L. Bernheimer, a large portion of the said product in payment of the claims due them, and also permitted Pitts & Paulk, W. M. Pitts and Bernheimer to knowingly appropriate the proceeds of said product to the payment of the debts due to themselves, with the intent to prefer the said debts over and above the claims of other creditors; that J. A. Paulk diverted a large portion of said output to the payment of private debts, including his taxes due the State, and also the county of Bullock; that Bernheimer, of the assets of said corporation received by him, failed and refused to apply any part thereof to the payment of the past due coupons of the bonds of said corporation in his hands, but insisted on the payment of the amount due him on such coupons,

and threatened to apply to the trustee for the bondhold-
ers, under the stipulations of the mortgage given to se-
cure the bonds, to foreclose the same, unless such cou-
pons and all taxes which were unpaid, should be at once
liquidated, knowing that he had received assets which he
should have applied to the payment of said coupons, and
the taxes for 1896, then past due and unpaid, and the
president neglected and refused to require said Bern-
heimer to apply the assets in his hands to the payment of
the past due coupons held by him; that the directors and
certain stockholders, on February 23, 1897, got together
and adopted a resolution authorizing the bondholders to
sell the plant at public auction, and this was done at the
instigation of L. Bernheimer; that a short time after
said meeting, J. L. Pitts, who was a brother-in-law of
J. A. Paulk, and a creditor of his to the amount of about
$2,000, voluntarily and without any request from Bern-
heimer, or any officer of the corporation, went to the Bul-
lock County Bank where the unpaid coupons of Bern-
heimer were sent for collection, and paid the same, and
said bank then transferred said coupons to him; that a
short time after these coupons were turned over to him,
he, Bernheimer, and said L. Sessions, representing them-
selves to be the holders of all the bonds, in writing made
an application to the Bullock County Bank, as trustee,
to foreclose the mortgage referred to; that J. L. Pitts
owned no bonds, and only held the coupons acquired by
him as herein stated; and that all the coupons held by
Sessions had been paid to him. The said trustee then
filed a bill in the chancery court of Bullock county to
foreclose said mortgage, and it is alleged that J. L. Pitts
either employed or agreed to pay all counsel engaged in
said suit on the side of the complainant. That the only
party defendant to said bill was the Bullock County
Manufacturing Company, which was brought into court
by service of citation on J. A. Paulk, as its president;
that no defense was made to said suit; that a decree *pro
confesso* was taken against the defendant; that said suit
was a collusive effort on the part of the parties thereto
and the officers of the corporation, to prefer any claim or
debt held by J. L. Pitts against said corporation and the
said J. A. Paulk, and also to enforce the payment of the

said bonds before they were rightfully due. That although the taxes were due, neither the trustee, the bondholders nor J. L. Pitts made any offer or attempt to pay the same; that by written agreement, signed by said corporation and all the officers in direct cause, the said defendant corporation consented for a final decree to be rendered in said cause in vacation. Said agreement was attached to the bill as an exhibit. Said cause was submitted to final decree in vacation, and decree rendered in vacation, a copy of which is attached to the bill as an exhibit. Said decree ordered the sale of said plant, and the same is now advertised for sale by the register. It is then averred that said suit, from its institution to its final decree, is a collusive effort to hinder, delay and defeat the general creditors of said corporation.

The Bullock County Bank, the Bullock County Manufacturing Company, J. L. Pitts, J. A. Paulk, J. L. Paulk, W. M. Pitts, Dr. L. Sessions and L. Bernheimer are made parties defendant to the bill.

The bill prays that a receiver be appointed to take charge of the property of the corporation pending this litigation. It further prays: 1. To declare the bill filed by Bullock County Bank v. Bullock County Manufacturing Company to be collusive and fraudulent and begun for the purpose of hindering, delaying and defrauding the manufacturing company's creditors, and to dismiss the same out of court.

2. To declare said bonds to be null and void and order them to be delivered up and cancelled, or in the alternative to declare that they are not a prior claim or lien to the debts of the general creditors.

3. To declare the mortgage null and void, and cause same to be cancelled, and that J. L. Pitts has no claim against the corporation for money paid out by him for past due coupons, or in the alternative that he is only a simple creditor for said amount.

4. That the amount of the property wrongfully appropriated by W. M. Pitts, Pitts & Paulk, J. A. Paulk, J. L. Paulk and L. Bernheimer be ascertained and that they be required to bring the proceeds into court, and be held as trustees of all such property and made to account for the same; and that all the property of the corporation be

[Anderson *et al.* v. Bullock County Bank.]

sold and the proceeds be brought into court for distribution, and be subjected to the payment of the debts due appellant, as well as other creditors; also that the decree rendered in the foreclosure suit be declared null and void, and the bill in said cause be dismissed.

The Bullock County Manufacturing Company, J. A. Paulk, J. L. Paulk, J. L. Pitts and W. M. Pitts separately and severally demurred to the bill upon the following, among other grounds: 1st. Said bill seeks to declare void the bonds and mortgages of the Bullock Manufacturing Company, on the ground of irregularity in the issuance of said bonds and the execution of said mortgage; while it shows that none of the complainants were or are stockholders of said corporation. 2d. They demur to that portion of said bill which seeks relief upon the averments that S. J. Foster purchased $18,000 worth of said bonds for $16,500. (a.) Because these complainants are shown by the bill to be simple contract creditors, and do not show that they were injured thereby; (b.) because said facts give the complainants no equity, or ground for the relief prayed against these defendants or either of them; (c.) and because usury is a defense personal to the borrower, or his personal representatives; and can not be set up by creditors of a borrower who had no connection with said transaction. (d.) And because the amount of usury is not set forth distinctly and correctly, nor the terms and nature of the usurious agreement, nor the amount of the payments; (e.) and because the purchaser of the bonds of a corporation at less than their face value, is permitted by law and is not an usurious transaction; (f.) because the consideration of bonds can not be impeached by a stranger, not standing precisely in the situation of the original parties, and identified in equity by privity of title with them. 3d. The facts averred do not show any wrong committed by S. J. Foster or J. A. Paulk in the transaction averred to have taken place between them in the exchange of the stock and bonds of the Bullock County Manufacturing Company. 4th. The bill is multifarious in that it complains of acts done by different parties who were made defendants to said bill, while said acts have no connection with each other and said parties are not shown to have been in

privity with each other. 5th. There is a misjoinder of parties defendant to said bill in that the defendants charged therein with a misappropriation of the proceeds of the product of said defendant corporation are joined with its bondholders, who are charged with acts going to make said bonds mature before they were rightfully due. 6th. The bill does not state any facts which show that these defendants or either of them, in the decree of foreclosure, were guilty of a collusive effort to prefer any claim or debt held by J. L. Pitts against said corporation, and the said J. A. Paulk.

The Bullock County Bank demurred to the bill upon the following, among other grounds: 1. The bill does not state any facts which show that this defendant in the decree of foreclosure was guilty of a collusive effort to prefer any claim or debt held by J. L. Pitts against said corporation and the said J. A. Paulk. 2. The bill does not state any facts which show that this defendant was guilty of collusive effort to enforce the payment of said bonds before they were rightfully due. 3. The bill does not show that this defendant is violating its fiduciary duties by misusing, misapplying or wasting the said property, the subject matter of this suit.

There was also a motion made by the defendants to dismiss the bill for the want of equity.

Upon the submission of the cause upon the demurrers and motion, the chancellor sustained the grounds of demurrer which are above set out. From this decree the complainants appeal, and assign the rendition thereof as error.

J. D. NORMAN, for appellants.—Appellants do not gainsay the general proposition that creditors can take advantage of defects in the creation of debts and mortgages by corporations, on account of non-compliance with statutory requirements, but when such debts in the shape of bonds and mortgage to secure the same are created in favor of a director and the largest stockholder in the corporation, for a larger amount than is really due, under an agreement in the directory made before hand, and when this debt is permitted to run for several years, the director collecting interest annually on the

[Anderson *et al.* v. Bullock County Bank.]

face thereof ($18000) when the true amount is $16,-500.00, it seems this is such an abuse by the directory of the corporation of their position as amounts to a fraud, and the general creditors can take advantage of it. The creditors of corporations are directly interested in its capital stock and have the right to complain of its illegal embarrassment.—1 Morawetz on Corporations, § 568; 2 Morawetz on Corporations, § 794; *Bank of St. Mary's v. St. St. John, Powers & Co.,* 25 Ala. 612; *O'Connor M. & M. Co. v. Coosa Furnace Co.,* 95 Ala. 615; *Drury v. Cross,* 7 Wall, 299. The purchase of said bonds at a discount was an abuse of Dr. Foster's position as a director in said corporation, and cannot be upheld.—*Duncomb v. N. Y. H. & N. W. R. R. Co.,* 84 N. Y. 190; *Van Colt v. Van Brunt,* 82 N. Y. 540.

The mortgage is fraudulent and void because it tends to increase corporate indebtedness in violation of the constitutional provision hereinbefore referred to, and also because the consideration therein named is simulated, and exagerated.—*Lawson v. Alabama Warehouse Co.,* 80 Ala. 343; *Hall v. Heyden,* 41 Ala. 242; *Bradley & Co. v. Ragsdale,* 64 Ala. 558; *Dickson v. McLaney,* 97 Ala. 390. And the circumstances detailed in the billl show actual fraud in the issuance of the bonds, and is available to future creditors.—*Echols v. Orr, Scroggins & Hunes,* 106 Ala. 237; *Dickerson v. McLancy,* 97 Ala. 383; *Seals v. Robinson,* 75 Ala. 364; *Yeend v. Weeks,* 104 Ala. 339; *Price v. Masterson,* 35 Ala. 483.

D. S. BETHUNE, ERNEST L. BLUE, THOS. G. & CHAS. P. JONES, HOLLOWAY & HOLLOWAY, *contra.*—The attacks made upon the bonds and mortgage are solely upon the ground that the statutes controlling and governing the issuance of bonds, and the execution of mortgages by private corporations have not been complied with. The facts alleged that they were not authorized by the stockholders; that the debt was simulated and fictitious; that it was an increase of the indebtedness of the corporation beyond its capital stock that the transaction was usurious; that the bonds were sold below their face value, &c, &c, all come within the provisions of the statute laws of the State, and this Court has repeatedly held,

[Anderson *et al.* v. Bullock County Bank.]

so that it has become a settled rule in this State, that stockholders, and they alone, can complain of irregularities, or non-compliance with statutory requirements in such cases made and provided. Simple contract creditors can not take advantage of any such matters. For these reasons demurrers 3, 4 and 5, and all other bearing on this proposition should be sustained. The chancellor did not err in his ruling.—Code of 1886, § 1664, subd. 7; *Barrett v. Pollak*, 108 Ala. 390; *Ala. Iron Works v. McKeever*, 112 Ala. 134; Code of 1886, § 1562; *Nelson v. Hubbard*, 96 Ala. 238; *O'Connor M. & M. Co. v. Furnace Co.*, 95 Ala. 618; *M. & C. R. R. Co. v. Woods*, 88 Ala. 630; *Morton & Bliss v. N. O. & S. R. Co.*, 79 Ala. 610.

Fact that bonds sold below their face value does not violate any law, and the bonds if voidable at all, are only voidable at the election of the corporation and stockholders. Consideration of bonds cannot be impeached by a stranger not standing precisely in the situation of the original parties, and identified in equity by privity of title with them.—*Nelson v. Hubbard*, 96 Ala. 238; *O'Connor v. Furnace Co.*, 95 Ala. 618; *Morton v. R. Co.*, 79 Ala. 610; *M & C. R. R. Co. v. Woods*, 88 Ala. 630. Usury is a defense personal to the borrower and his personal representative and cannot be set up by creditors of a borrower who had no connection with the transaction. Amount of usury, terms, not set out.—3 Brick. Dig. 574, § 47 and authorities.

The bill shows that there are bonds of the corporation outstanding to the amount of $17,000.00, and it alleges that the defendant L. Bernheimer holds $13,000.00 thereof, and that the defendant L. Sessions holds $2,000.00 thereof, which leaves $2,000.00 in value thereof unaccounted for. It is not alleged who owns them, nor is it alleged that after diligent inquiry the owners are unknown. The bill seeks to have all the bonds declared null and void, yet does not offer to give the party, or parties, who hold the remaining $2,000.00 unaccounted for, any opportunity to defend the suit. In so far the hearing would be purely *ex parte*. The rights of all the bondholders being the same, and the results sought to be enforced against them being the same, the owners of said bonds unaccounted for in the bill are necessary parties.—*Prout v. Hoge*, 57 Ala. 28; *Stammers v. McNaugh-*

*ten*, 57 Ala. 277; *Teague v. Corbitt*, 57 Ala. 529; *Bragg v. Beers*, 71 Ala. 151.

McCLELLAN, C. J.—Appellants as simple contract creditors of the Bullock County Manufacturing Company, a private corporation, filed their bill for the purpose of having cancelled and annulled mortgages executed to secure the bonds of said corporation, and to hold certain of its officers, president, secretary, and a director, individually responsible for assets of the corporation, alleged to have been appropriated by them to debts due them individually, and also one of the bondholders for the proceeds of assets applied to the payment of the individual debt of the president of said corporation, and also a debt due him from the corporation. Neither of the debts due complainants accrued prior to the year 1896. The first eleven paragraphs of the bill deal principally with the bonds and mortgages executed by the corporation. The respondent debtor corporation was incorporated on the 7th of November, 1889, with an authorized capital stock of $25,000, of which $21,800 was paid up, and no more of the stock it seems was ever subscribed for or issued. On the same date, by resolution of a majority of the stockholders, authority was given to issue forty bonds, each of the face value of $500, aggregating $20,000, to mature and become due in five years. Only thirty-six of the bonds were issued, all of which were taken by S. J. Foster, the president of the corporation, he paying in cash therefor the sum of $16,500. It is averred in the bill that the bonds were worth their face value, and it is charged that the statutory requirements as to notice for the issuing of bonds and making mortgage, were not complied with. The pleader concludes from this statement of facts with the averment that the bonds and mortgage were usurious and void.

It has been often decided that subdivision 7 of section 1256 of the Code of 1896 (1664 of the Code of 1886), was intended for the protection of the stockholders, and if there was no complaint on their part, the failure to observe its provisions was not available to creditors.— *Nelson v. Hubbard*, 96 Ala. 238; *Barrett v. Pollak*, 108 Ala. 390; *Ala. Iron Co. v. McKeever*, 112 Ala. 134.

The mere fact that the president of the corporation with the consent of the board and stockholders, purchased bonds of the corporation of the value of eighteen thousand dollars for sixteen thousand and five hundred dollars alone furnished no ground of complaint to creditors, whose debts were not contracted for nearly six years afterwards, either on the ground of usury or fraud. From all that is said in the bill, our conclusion is, that so far as complainants are concerned, the issue of the bonds referred to and the execution of the mortgage to secure them, was done in good faith and are valid. The bill then proceeds to set out a transaction or "deal" between the said S. J. Foster and J. A. Paulk, which occurred in the year 1895. It avers that the said Foster owned the stock originally issued to him, and seventeen thousand dollars of said bonds (one thousand of the eighteen thousand having been retired) ; that J. A. Paulk owned a large quantity of the stock of the Bullock County Bank, a private corporation, and that they agreed to exchange the one for the other; that is, that S. J. Foster would transfer his bonds and stock of the Bullock County Manufacturing Company to J. A. Paulk, and in exchange therefor the said Paulk would transfer his bank stock to said Foster. As the bonds were past due, it was agreed that Foster should procure the issue of new bonds, to run for ten years. At the time of the agreement between Foster and Paulk, the bill avers that Paulk was indebted largely to one Bernheimer and to one Sessions, to secure which he had deposited with them as collateral a large part of the bank stock owned by him, and in order to carry out his agreement with Foster, it was agreed and understood that the said Bernheimer and the said Sessions should release the bank stock thus held as collateral, and to receive from J. A. Paulk the new bonds of the Bullock County Manufacturing Company when transferred to him by Foster in lieu of the bank stock. At a meeting of· the stockholders of the Bullock County Manufacturing Company held on the 22d of May, 1895, a resolution was adopted, authorizing the issue of thirty-four bonds, each for five hundred dollars, aggregating seventeen thousand dollars, bearing eight per cent with interest coupons attached, payable semi-annually, to be secured by mortgage on all the assets owned or to be acquired, and it is stated in the

resolution, that the purpose of this issue of bonds was to retire and cancel the old outstanding bonds, which were then past due and unpaid. The new bonds for five hundred dollars each were issued, and the mortgage to secure them executed, which was duly acknowledged and recorded. Each of these bonds on its face purports to be one of a series of forty, each of five hundred dollars, aggregating the sum of twenty thousand dollars, and in the mortgage to secure them it was stated, that the bonds were issued to purchase new machinery, lots, etc. to carry on the business of the corporation. Complainants do not aver that more than thirty-four bonds, aggregating seventeen thousand dollars, were issued, and it is fairly inferred from their pleading that thirty-four bonds were issued and delivered to S. J. Foster, the owner of all the outstanding old bonds, and that the old bonds were surrendered in lieu of them. The bill further shows that S. J. Foster endorsed said bonds without recourse, and that they were delivered and his stock transferred to J. A. Paulk as agreed upon, and that J. A. Paulk delivered thirteen thousand of them to Bernheimer and two thousand to Sessions, and the bank stock held as collateral was delivered to Foster, thus carrying out the agreement between the said Foster and J. A. Paulk. So far, we discover nothing unusual or fraudulent in the transaction between S. J. Foster and J. A. Paulk, and J. A. Paulk and Bernheimer and Sessions. It seems to be a mere contract between the parties for the exchange of property and the substitution of one collateral for another. But complainants insist that as the resolution of the stockholders of the Bullock County Manufacturing Company authorized the issue of only thirty-four bonds of five hundred dollars each, aggregating seventeen thousand dollars, and as the new bonds on their face show that they were a series of forty bonds, aggregating twenty thousand dollars, and as the mortgage executed to secure them, purports to secure forty bonds aggregating twenty thousand dollars, it is manifest that there is a simulated, fictitious debt secured, which stamps both bonds and mortgage with fraud, and vitiates them as valid claims, and further, that the bonds were issued without authority. The bonds and mortgage bear date May 22d, 1895; the mortgage seems to have been duly filed for record. Neither the bonds nor mortgage

are void upon their face.  Complainants did not become
creditors until almost a year subsequent to the issue of
the bonds and the execution and record of the mortgage.
They were chargeable with notice of the existence of the
bonds and mortgage.  It does not appear that there were
creditors then, other than the holders of the bonds and
coupons, and they were owned and held by a stockholder
and director of the corporation, who favored the resolu-
tion at the stockholders meeting and signed the bonds.
Neither the corporation nor the bondholders, nor owners
of the stock, raise any objection to their validity.  Prob-
ably the stockholders may have cause to complain, but
in the absence of actual fraud —a conclusion not author-
ized by the facts stated—the complainants cannot com-
plain.  If we were to concede the invalidity of the new
bonds and mortgage to secure them, we do not see how
complainants are to be benefitted in this phase of the
case.  As stated, the corporation was indebted to S. J.
Foster in the sum of seventeen thousand dollars evi-
denced by the old bonds, and which are secured by the
first mortgage.  Unless this debt was satisfied and can-
celled by the new bonds, it remains in force, and must
be satisfied from the proceeds of the assets of the corpora-
tion debtor covered by the first mortgage, in preference
to complainants' claims.  We do not find that complain-
ants are entitled to any relief from the averments thus
far considered.

The complainants further aver that after J. A. Paulk
acquired the bonds and stock from S. J. Foster, at a meet-
ing of the stockholders held in June, 1895, he, the said
Paulk, was elected president and his son secretary, and
that he continued as its president, exercising a control-
ling influence in its management.

Paragraphs twelve and thirteen of the bill are quite
lengthy, consisting of many disconnected statements,
which seem to have no special relations to each other,
and we are not sure that we fully apprehend the purpose
and scope intended by them all.  We are of the opinion
that the main purpose of these paragraphs was to assail
the validity of a decree which had been rendered by the
chancery court, foreclosing the mortgage for the benefit
of the bondholders, and also to hold the president, J. A.
Paulk, and secretary and treasurer J. L. Paulk, and
certain creditors of the corporation, trustees *in invitum,*

for the proceeds of the property of the corporation, applied to the payment of claims due them, by which they were preferred to other creditors. The *bona fides* of these claims is not assailed. The complaint is, that such preferences are unauthorized and illegal. The mortgage provides that in default of the payment of the taxes due from the corporation for six months, or in default of the payment of the coupons, the whole of the bonds shall mature and become due, and upon request of the bondholders owning one-fourth of the entire amount, the trustee shall proceed to foreclose the mortgage. The bill for the foreclosure avers default for more than six months, and that there were past due over fifteen hundred dollars of unpaid interest coupons, that the corporation has become insolvent, and that the officers of the corporation had ceased to give it any attention, and that the property was wasting for want of care, and that all the bondholders had united in demanding the foreclosure of the mortgage. The foreclosure decree is dated June 12th, 1897, and complainants' bill was filed July 19th, 1897. It avers the insolvency of the corporation, that its officers had ceased to give it any attention, and that its property was being wasted for want of attention, and it prays for the sale of the same property decreed to be sold by the foreclosure suit. No reason is assigned why the property will not sell for as much under the foreclosure decree, as under a decree in the present proceeding, and the foreclosure decree provides that the register shall not receive a less bid than seventeen thousand dollars. It is clear from complainants' bill, that there is a valid debt, evidenced by bonds issued by the corporation debtor, secured by mortgage, amounting to seventeen thousand dollars, which is entitled to preference over complainants' claims, and it is not shown that the assets are worth more than seventeen thousand dollars. The averments of the bill of complainants fall far short of showing, that the proceedings in the chancery court were fraudulent and collusive. This decree is defective and insufficient in that the decree does not ascertain and adjudge an indebtedness, and ascertain the amount. It is probable that the decree should be amended *nunc pro tunc,* so as to authorize a sale of the property.

[First National Bank of Tuscaloosa v. Leland.]

The bill is also without equity in its attack upon transfers of property by the corporation to and in payment of debts held by its directors and officers.—*Corey v. Wadsworth et al.*, 118 Ala. 488. The assignments of demurrer going to this part of the bill were well taken; and the motion to dismiss the bill for want of equity should have been granted. But as this appeal is by the complainants below and only the court's rulings in sustaining certain assignments of demurrer are assigned as error, and these rulings are without error, the decree must be affirmed.

Affirmed.

(The foregoing opinion, with the exception of the last paragraph, was prepared by former Justice COLEMAN.)