# Stuart *v.* Holt, *et al.*

### Mortgage Foreclosure.

(Decided November 16, 1916.   Rehearing denied December 30, 1916.
73 South. 390.)

1. **Corporation; Mortgages; Incidents.**—Where a resolution of the directors of a corporation, approved by its stockholders, provided that the corporation borrow a certain sum of money, to be evidenced by three notes, bearing interest, to be secured by a first mortgage on all its then owned and after acquired property, with certain exceptions, the notes and mortgage to be executed in the name of the corporation by its vice-president and attested by its secretary, the notes to be negotiable, and the notes and mortgage to contain provisions satisfactory to the mortgagee, with a view of the partial reorganization of the company, fully understood by a majority of the board, but not understood by a minority, authorized a mortgage to secure a pre-existing indebtedness and not an actual loan.

2. **Fraud; Presumption.**—Fraud is never presumed, and when relied upon must be distinctly alleged and proven.

3. **Bankruptcy; Mortgages; Validity.**—The provisions of subdivision 3, § 3481, Code 190, were enacted for the benefit of stockholders, and cannot be raised by the trustee in bankruptcy of the mortgagor corporation.

[Stuart v. Holt, et al.]

APPEAL from Autauga Chancery Court.

Heard before Hon. W. W. PEARSON.

Bill by Louise N. Holt and others against the Prattville Cotton Mills Company and George Stuart, its trustee in bankruptcy, with cross-bill by defendant trustee. Decree for complainants, and defendant trustee appeals. Affirmed.

The bill in this case was filed by Louise N. Holt and others against the Prattville Cotton Mills Company, and sought the foreclosure of a mortgage which the bill alleged had been executed by said company to B. L. Holt, now deceased; the complainants being the widow and children, respectively, of said Holt.

An amendment to the bill discloses that subsequent to the filing of the original bill the Prattville Cotton Mills Company was adjudicated a bankrupt, and that George Stuart was elected as trustee. Said Stuart, as trustee, was made a party defendant.

The trustee sought to defend against the foreclosure of said mortgage by setting up that, under the resolutions of the stockholders and directors, the vice-president and secretary of the corporation were authorized to execute a mortgage to said Holt to secure money to be borrowed from him, and that, as a matter of fact, no money was loaned by Holt to the corporation after the adoption of said resolution. It was also alleged in the answer that at the time of the adoption of the resolutions in question the board of directors of the corporation consisted of B. L. Holt, M. A. Graham, Daniel Pratt, H. S. Doster, and W. L. Ellis; that said Holt claimed that the corporation was indebted to him in a sum in excess of $143,000; that prior to the adoption of the resolutions it was agreed between Holt, Pratt, and Graham that, in part payment of said claims, Holt should take new stock in the corporation in a sum exceeding $68,000, and that a mortgage should be given by the corporation to Holt to secure the sum of $62,500, the balance of the alleged debt; and that, by agreement between Holt and Pratt, the latter was to have one-fourth interest in the proposed mortgage.

The answer further set up an agreement between Holt, Pratt, and Graham whereby Holt should lend Pratt and Graham money to be used by them in paying for new stock in the corporation, and also alleged that Holt drew two checks in favor of the corporation, one in the sum of $68,555.55 and the other in the sum of $62,500, and that, as a part of the same transaction, a check

of the ·corporation in the sum of $143,726.07 was prepared under the direction of Holt, and the name of the corporation signed thereto by Holt as president; that these checks were exchanged and deposited in the bank to the credit, respectively, of the corporation and of Holt.  It was further alleged that the drawing of these checks was a mere matter of form; that, in fact, no money was paid or loaned to the corporation by Holt on the security of said mortgage; and that it was not contemplated by Holt, Pratt,. and Graham that Holt should loan any other money to the corporation.

The answer further set up that the mortgage was not executed in pursuance with the resolutions referred to therein, and that the effect of the mortgage was to secure a pre-existing debt; that Holt at the ·time was president of the corporation and the owner of a majority of its capital stock, and that he continued in the active management of the corporation until his death; that after his death R. L. Harmon, his son-in-law, was elected president· and a director of ·the corporation and assumed active management of the same, which arrangement continued until the date of his death, which occurred a few months prior to the filing of the bill in this case; and that said Harmon was attorney both of said Holt and the corporation, and represented both parties in the preparation of the mortgage.

It was further alleged that from the time of the execution of the mortgage until the death of Harmon none of the directors, with the exception of Harmon, Pratt, Graham, and Holt, were actively engaged in the management of the corporation, or were advised as to its financial condition, or knew that it was intended by Holt that the ·mortgage should be executed to secure a pre-existing debt.   No fraud is averred in the answer.

The mortgage, a copy of which is made an exhibit to the original bill, was executed on January 2, 1911, in the company's corporate name, by W. L. Ellis, its vice-president, and attested by M. A. Graham as its secretary.

The resolution of the board of directors passed on December 22, 1910, as well as the resolution of the stockholders passed on the same day, is copied in the mortgage.   The resolution of the board of directors reads as follows:

"Be it resolved that this corporation borrow from B. L. Holt sixty-two thousand and five hundred ($62,500) dollars, to be evidenced by three principal notes, one for forty-nine thousand

dollars, one for twelve thousand five hundred dollars, and one
for one thousand dollars; each of said notes to be dated January
2, 1911, and to become due and payable January 2, 1931, and to
bear interest at the rate of 6 per cent. per annum from date;
said interest notes to be payable semi-annually on the 2d days
of January and July of each year; said notes and the interest
to be secured by a first mortgage on all the real estate, buildings,
machinery, tools, and implements owned by the corporation
now and which it may acquire in the future, the intent being to
include all of the property of the corporation, except manufac-
tured goods and raw material which it has for sale or for manu-
facture and the bills receivable due to it; said notes and mort-
gage to be executed for and in the name of the corporation, by
its vice-president, and attested by its secretary; said principal
and interest notes to be negotiable; such notes and mortgage to
contain such terms and stipulations and to be in such form as may
be satisfactory to the said B. L. Holt."

The resolution of the stockholders was practically the same
as that of the board of directors.

The answer as amended was sought to be made also a cross-
bill for the purpose of having the court declare the mortgage a
general assignment for the benefit of all the creditors. A de-
murrer to the cross-bill was sustained by the court; but this
ruling is not assigned as error, and it is therefore not treated.

The evidence tended to show that the corporation was largely
indebted to B. L. Holt, its president, the sum owed him being in
excess of $140,000 and that it was discussed among the directors
that there would be a reorganization (in a sense) of the corpora-
tion; that its capital stock be doubled. Some of the stockholders
and directors, other than said Holt, held notes against said cor-
poration, and it was agreed that new or additional stock should
be issued in payment of the corporate indebtedness. Holt took a
large amount of the additional stock in payment of a large por-
tion of his indebtedness, and also advanced money to Pratt and
Graham with which to purchase additional stock, leaving the
indebtedness of the corporation to him then due $62,500; and this
indebtedness was secured by the mortgage here in question, he
extending the said loan for 20 years and reducing the interest
to 6 per cent.

W. L. Ellis, vice-president, and one of the directors, testified
that he understood that Mr. Holt was actually to lend the cor-

poration the money, but there was evidence for the complainants tending to show that Ellis was present when the plans were fully discussed. H. S. Doster testified that he was present when the resolution of the board of directors was passed, and that he was under the impression that the plan discussed and provided for by the resolution would liquidate the indebtedness of the corporation and give it a surplus to run on. Messrs. Holt, Pratt, and Graham, the evidence shows, fully understood the transaction, and were agreed that no money was to be loaned by Holt further than as represented by his check which was also offset by a check of the corporation to said Holt, and in fact that the transaction was to take this form.

A final decree was rendered for complainants ordering the foreclosure of the mortgage, and from this decree the trustee prosecutes this appeal.

BLAKEY & STRASSBURGER, and W. F. THETFORD, for appellant. STEINER, CRUM & WEIL, and J. R. THOMAS, for appellee.

GARDNER, J.— (1) It is insisted by counsel for appellant that the trustee in bankruptcy has established the invalidity of the mortgage here sought to be foreclosed upon either of two theories. It is not disputed that the mortgage was executed in the corporate name by the vice-president and attested by the secretary in due form as authorized by the board of directors at a regular meeting held for that purpose. The insistence, however, in the first place, is that the resolution of the board authorized the execution of the mortgage to secure money to be borrowed from B. L. Holt, and that, as there was not an actual loan of the money, the execution of the mortgage was unauthorized (citing *Koehler v. Black Falls Co.*, 2 Black 715, 17 L. Ed. 339; *Davis v. Rock Creek Lbr. Co.*, 55 Cal. 359, 36 Am. Rep. 40), and that therefore it did not represent the act of the corporation.

If it be conceded, for the purposes of this case, that the language of the resolution of the board of directors was such as, under ordinary circumstances, would limit the authority to execute the mortgage, and authorize its issuance only upon the actual loan of the money, yet we are of the opinion under the facts here disclosed that this concession would not avail respondents in this cause. It appears without conflict that all of the members of the board of directors were present at the time these

resolutions were passed and voted for the same, and that it was understood that a practical reorganization of the corporation was intended. It is also without dispute that the majority of the board fully understood that the mortgage to Holt was to secure the balance of the corporation's indebtedness to Holt after he had surrendered a large portion of his indebtedness for additional stock, and that as a part of this transaction the balance of said indebtedness was to be extended for a period of 20 years, and the interest reduced to 6 per cent. per annum. It was also fully understood by a majority of the board that the transaction should take the form of a loan by Holt to the corporation of the said sum of $62,500, but that, in fact, no actual loan would be made, and the resolution was so worded.

One of the directors, Mr. Ellis, who insisted in his testimony that he was a "mere figurehead," testified that he understood that there was to be no actual loan of the money; and another director, Mr. Doster, said that he was under the impression that the arrangement made would liquidate the indebtedness of the corporation and furnish it a surplus.

The resolution was unanimously adopted, and the mortgage executed a few days thereafter. Additional stock was issued to Holt in payment of the indebtedness of the corporation to him not represented by this mortgage. The capital stock of the corporation being doubled, Holt advanced money to Pratt and Graham with which they could, and did, purchase additional stock.

Subsequent to the execution of the mortgage, at a meeting of the board of directors, Mr. Doster offered a resolution expressly ratifying and confirming the act of Mr. Ellis as vice-president, and that of Mr. Graham as secretary and treasurer, in executing the mortgage to Mr. Holt.

The interest on the debt was paid by the corporation for one or two years, and the entire transaction was acquiesced in by the corporation and its stockholders, so far as here appears; and no objection was made until that interposed by the trustee in bankruptcy more than three years after the execution of the mortgage.

(2) Fraud is never presumed, but, when relied upon, must be distinctly alleged and proved.—*Clements v. Clements,* 72 South. 523. No fraud is alleged in the answer. The right and power of the corporation to execute this mortgage to secure a pre-existing debt of said Holt is not questioned by counsel on this

appeal; nor is it questioned that those members of the board of directors who fully understood that the transaction was to take this form, represented a majority, and had the full right and power to order its execution, but it is insisted that, while they had the right and power to so order, the language used in the resolution was inapt for that purpose, and that therefore the mortgage was unauthorized, and its execution did not represent the act of the corporation.

We are of the opinion, however, upon the facts here disclosed, notably that a majority of the board fully understood that the transaction should take this form, and that no fraud is alleged, that the act of the corporation sufficiently appears. Reduced to its last analysis, the insistence would lead to the invalidation of the mortgage because of a lack of full understanding on the part of an impotent minority of the board. We conclude that the insistence is not well taken.

A meeting of the stockholders was held on the same day as that of the board of directors, and at this meeting each share of stock issued and outstanding was represented, either in person or by proxy. A resolution similar in all respects to that of the board of directors was unanimously passed by the stockholders.

(3) It is urged, however, that the mortgage was invalid as having been executed without a compliance with subdivision 3 of section 3481 of the Code of 1907, requiring the consent of the persons holding the larger amount in value of the capital stock of the corporation, present and voting in person or by proxy, at a meeting of the stockholders called for that purpose or at a regular meeting, that the real property of the corporation be mortgaged. The evidence shows that said B. L. Holt owned the majority of the capital stock of the corporation, and that the resolution was unanimously passed by the stockholders, as previously stated.

The argument upon this theory of the case is rested largely on the same line of reasoning as that above discussed; that is, that the language of the resolution of the stockholders did not authorize the execution of the mortgage here involved where there was no actual loan made. The insistence which we have here first treated—that is, that the execution of the mortgage was not the act of the corporation because not authorized by its board of directors—rested upon the theory also that the trustee in bankruptcy stands in the shoes both of the bankrupt and the

creditors (*Cartwright v. West,* 173 Ala. 198, 55 South. 917; Collier on Bankruptcy, [10th Ed.] 1914, p. 278), and therefore that the trustee in bankruptcy was in a position to raise the point. The second theory, however, above referred to, that of nonconsent of the stockholders, does not stand upon the same footing. That portion of subdivision 3 of section 3481 here involved was enacted for the benefit of the stockholders, and they have not complained.

This question is fully discussed by the United States Court of Appeals in *Westerlund v. Black Bear Mining Co.,* 203 Fed. 599, 121 C. C. A. 627, where many cases are reviewed. It was there stated that statutes of this character are regarded by the great weight of authority as having been enacted for the protection of the stockholders, that neither the corporation nor one representing it or its creditors can invoke the statute against an executed contract, and that, the stockholders making no complaint, a trustee in bankruptcy is not in a position to invoke the aid of such a statute. We are of the opinion that the following cases of this court support this principle: *West Point M. & M. Co. v. Allen,* 143 Ala. 547, 39 South. 351, 111 Am. St. Rep. 60, 5 Ann. Cas. 532; *Nelson v. Hubbard,* 96 Ala. 238, 11 South. 427, 17 L. R. A. 375; *Barrett v. Pollak,* 108 Ala. 390, 18 South. 615, 54 Am. St. Rep. 172; *Ala. I. & S. Co. v. McKeever,* 112 Ala. 134, 20 South. 84; *Anderson v. Bullock County Bk.,* 122 Ala. 275, 25 South. 523; *Hillcrest Land Co. v. Foshee,* 189 Ala. 217, 66 South. 478.

Much stress is laid by counsel for appellant upon the case of *So. Bldg. & Loan Ass'n v. Casa Grande Stable Co.,* 128 Ala. 624, 29 South. 654; Id., 119 Ala. 175, 24 South. 886. A careful examination of that case leads to the conclusion that the question here under consideration was not there presented.

We approve the following comment made upon the case by the Court of Appeals in the *Westerlun Case, supra:* "The question whether it or its stockholders alone had the right to avoid the mortgage for the lack of the latters' assent was neither presented, considered nor decided. If it had been, the Supreme Court of Alabama undoubtedly would have decided, as it had repeatedly done before, that the stockholders alone had that right."

See *Ala. I. & S. Co. v. McKeever, supra; Barrett v. Pollak, supra.*

[Lewis, et al. v. Davis.]

We therefore conclude that, the stockholders, making no objection, the trustee in bankruptcy is in no position to complain. The decree appealed from is affirmed.
Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.