# Kilgore *v.* Jones.

### Damage for Destroying Lien.

(Decided January 9, 1917. 73 South. 832.)

1. **Mortgages; Crops; Mortgagor's Title to Land.**—One in possession of land for ten years, cultivating it and paying taxes thereon, has such an interest in the land as authorized him to mortgage crops to be grown on the land by him in the future.

2. **Same; Destroying Lien.**—Where the action was for destroying a lien on mortgaged cotton an inquiry as to who, at the time the mortgage was executed and delivered to plaintiff, held the legal title to the land on which the cotton was to be grown, was not material, and plaintiff's objection thereto should have been sustained.

3. **Tenancy in Common; Contract; Crops.**—Where a tenant of land had an agreement with his daughter that she should have a crop on the place, and under the agreement they worked through and through the entire crop, he furnishing the teams and doing the plowing, and the daughter, with his children, doing the hoeing and assisting in gathering the crop, such tenant and his daughter were tenants in common of the entire crop.

4. **Mortgages; Priority; Crop.**—If, under the agreement between the tenant and the daughter, they were tenants in common, and if the daughter had knowledge or notice that the father had executed a prior chattel mortgage on crops to be raised by him when she entered into the agreement, her rights were subordinate to the lien of the chattel mortgage.

5. **Same; Recording.**—The recording of a chattel mortgage in the county of the mortgagor's residence, operates as notice to all persons of its contents, and of the lien or title of the mortgagee thereunder.

APPEAL from St. Clair Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

[Kilgore v. Jones.]

Action by S. D. Kilgore against H. Jones, for destroying a lien upon two bales of cotton. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The evidence shows that in February, 1912, Jim Turner executed a mortgage to plaintiff in the sum of $203.66, covering his entire crops of every description, raised by him during the years 1912, 1913, and 1914; that there was still due on said mortgage $155, that the cotton in controversy was grown in the year 1914; that H. Jones sold Turner 2½ tons of fertilizer to make a crop during the year 1914, and that in payment thereof Turner delivered to H. Jones the gin certificates for two bales of cotton, and that Jones received the two bales of cotton under these certificates, sold the same, and they were shipped out of the state.

M. M. SMITH, for appellant. EMBRY & EMBRY, for appellee.

BROWN, J.— (1) The undisputed evidence shows that Turner, who executed the mortgage to the plaintiff, had been in possession of the land upon which the cotton in controversy was grown for ten years and had cultivated and paid the taxes on the land during that time, and was so in possession when he gave the mortgage to the plaintiff in the year 1912. This evidence shows that he had such interest in these lands when the mortgage was given as would authorize him to mortgage the crops to be grown thereon by him in the future.—*Anders Mercantile Co. v. Rice Bros.*, 187 Ala. 468, 65 South. 388; *Littleton v. Abernathy*, 195 Ala. 65, 70 South. 282.

(2) The question as to who owned the land was not a material inquiry. The inquiry should have been limited to what, if any, interest Turner had in the land at the time the mortgage was executed and delivered to the plaintiff. See *Fields v. Karter*, 121 Ala. 331, 25 South. 800.

The evidence shows that Turner rented some land from Payton Rowland in 1914, and in February, 1914, he made an agreement with his daughter that she should have a crop on the Jordan Johnson place; that they worked "through and through" the entire crop. Turner furnished the teams and did all the plowing, and Emma Johnson, with Turner's children, did the hoeing and assisted in gathering the crop.

(3, 4) Under this agreement, Turner and Emma Johnson were tenants in common of the entire crop.—*Hairslip v. Bran-*

[Wilder v. Tatum.]

*num,* 198 Ala., 73 South. 464; *Haynes Merc. Co. v. Bell,* 163 Ala. 326, 50 South. 311; *Hendricks v. Clemmons,* 147 Ala. 590, 41 South. 306. And if Emma Johnson had knowledge or notice of the plaintiff's mortgage when she entered into the agreement, her rights were subordinated to the plaintiff's lien under the mortgage.—*Hairslip v. Brannum, supra; Mayer v. Taylor,* 69 Ala. 403, 44 Am. Rep. 522.

(5) The mortgage was executed on the 23d day of February, 1912, and was filed for record in the probate office of St. Clair county, and duly recorded there. The recordation of the mortgage, if St. Clair was the county of mortgagor's residence, operated as notice to all persons of its contents and of the lien or title of the plaintiff thereunder.—*Argo v. Sylacauga Merc. Co.,* 12 Ala. App. 442, 68 South. 534. It does not appear from the record that the Jordan Johnson place was situated in St. Clair county.

The court erred in not sustaining the plaintiff's objection to the question eliciting evidence as to who held the legal title to the lands on which Turner resided.

It was also error to give the affirmative charge for the defendant.

Reversed and remanded.